UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

LAURA DAVIS and EDWARD DABROWSKI

      as parents of a disabled student, C.D.

          Plaintiffs,

    -against-

CARMEL CENTRAL SCHOOL DISTRICT,

Defendant.

-----------------------------------------------------X

**COMPLAINT**

**INDEX NO.**

# 08 CIV. 0445

# JUDGE KARAS

## PRELIMINARY STATEMENT

1.   Plaintiffs are the parents of a disabled child and seek relief pursuant to the Individuals with Disabilities Education Act, ("IDEA") 20 U.S.C. §1415. The IDEA authorizes this Court to award all appropriate relief for violations of this federal statute, including, but not limited to declaration of a parent-selected private school placement as proper for the child. Plaintiffs were the prevailing party in an IDEA administrative hearing that arose from a disagreement with the defendant Board of Education of the Carmel Central School District regarding the Plaintiffs' disabled child's eligibility for IDEA entitlements to appropriate special education services.

2.   In achieving prevailing party status at the administrative hearing, Plaintiffs obtained relief from a State certified trier of fact. Thereafter, when the school district appealed to the

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

State Review Officer, they were denied access to any and all appropriate relief.  That SRO decision dated November 14, 2007, is appealed herein, see SRO Decision 07-114.

3.  Plaintiffs now seek reversal of the 07-114 State Review Officer's decision requesting application of and deference to, the two previous, unappealed SRO decisions, reinstatement of the hearing officer's decision and declaration that the 2006-07 Individualized Education Plan ("IEP") provided by the Defendant School District denied the student access to a free appropriate public expense.

## JURISDICTION AND VENUE

4.  This Court has original jurisdiction of this action under the IDEA, 20 U.S.C. 1415(e)(4)(A); as well as 28 U.S.C. §§1331 and 1343(a)(4).  This Court is authorized to grant the requested prospective, declaratory and injunctive relief pursuant to 28 U.S.C. §2201-02.

5.  The venue for this action lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §1391.  The Southern District of New York is the judicial district in which both the defendant operates and Plaintiff, and disabled daughter, reside, and in which the claim arose.

## PARTIES

6.  Plaintiffs Laura Davis and Edward Dabrowski ("plaintiffs" hereafter) are the parents of Chloe D. ("the student" hereafter) and residents of the Defendant CARMEL CENTRAL SCHOOL DISTRICT.  Laura Davis resides at 76 Bryant Trail, Carmel, N.Y. 10512 and Ed Dabrowski resides at 256 North Terry Hill, Carmel, New York 10512.

7.  Defendant Carmel Central School District ("Defendant School District" hereafter) is the Board of Education for the local education agency responsible for the provision of

appropriate special education and related services to children classified under the IDEA as disabled who reside in its district. The Defendant is responsible for the development and provision of an Individualized Education Plan (hereafter "IEP") for the student prior to the start of each school year, including 2006-07. At all relevant times, Defendant has classified the student as eligible for IDEA services and an IEP under a classification of "Learning Disabled".

## BACKGROUND FACTS

8. Herein, as they had in each of the two prior school years, Plaintiffs seek an order declaring their 2006-07 alternative private school placement of the student at Kildonan School, in Amenia, New York, appropriate and proper. This placement in 2006-07 represented a continuation of the appropriate education as defined in prior school years by the State Education Department, see **SRO Decisions, Appeal No. 05-063 and Appeal No. 06-005**.

9. Plaintiffs first raised their complaints regarding the provision of special education by the Defendant School District to their disabled daughter on August 19, 2004. They had rejected the public school's proposed placement and removed the student two years earlier.

10. Plaintiffs objections to Defendant's actions were sustained and appropriate declaratory and prospective relief was granted for 2004-05, **SRO Decision, Appeal No. 05-063**. One basis of the instant claim, regarding 2006-07, is that the Defendant School District continued to violate Plaintiffs' IDEA rights in each of the subsequent school years and in precisely the same ways as deemed illegal in 2004-05. For 2006-07, the Defendant proposed a similar placement for the student as was proposed and deemed inadequate in 2004-05.

11. In 2004-05, the proposal was for the student to be removed from the intensive, special private school where she had demonstrated success, and returned to the public school

3

with much less support and special assistance.  The IEP called for special education classes part-time in English, math and reading.  The remainder of the student's day was proposed for general education with supplemental services in the form of a resource room, see page 4, of the unappealed **SRO decision No. 05-063**.

12.    As mandated by the unappealed **SRO decision No. 05-063,** the student was entitled to appropriate educational placement at the parent-selected alternative private school, Kildonan.  That final decision, dated August 10, 2005, finally concluded that a free appropriate public education had been denied where there was no "*contribution [to the IEP] from the proper regular education teacher*", p. 8.

13.    As mandated by the unappealed **SRO decision No. 05-063,**  the student was entitled to an IEP developed by individuals who had considered, i.e. reviewed and discussed the test results performed by the student then-current educators at Kildonan, p. 10.  The SRO held that the student was entitled to an IEP which adequately describes the students present levels of performance with a "*meaningful description of the student's abilities and needs, or suggest specific deficits that need to be addressed*", p. 10.  The SRO put the Defendant on notice that the student's IEP had to indicate if the student needs to improve her decoding skills, reading comprehension skills or some other aspect of reading such as fluency.

14.    As mandated by the unappealed **SRO decision No. 05-063,** the student was entitled to an IEP which stated what grade level material the student was capable of reading, p. 10.    The SRO notified the Defendant that the student was entitled to an IEP with appropriate evaluations and anecdotal information to serve as a "*baseline from which to project goals and objectives*", p. 10.    The SRO notified the Defendant that the student was entitled to an IEP with appropriate short-term objectives to determine "*what intermediate*

*progress the student would have been expected to achieve*". Additionally, he declared that vague and immeasurable goals were "*not reflective of the student's present levels of performance and therefore are not reasonably calculated to enable this student to receive educational benefit*", **p. 11.**

15. The SRO finally declared that, for this student, an IEP that was not based upon properly-composed CSE, sufficient evaluations and inappropriate goals and objectives, constituted a denial of FAPE to the student, see 2004-05 decision, at **p. 11.**

16. In the SRO's decision brought before this Court herein, i.e. **SRO decision 07-114**, the SRO relied upon "*[t]he student's prior educational history described in Application of a Child with a Disability, Appeal No. 05-063…*" but declared that only issues "*raised in [the parents'] due process complaint notice*" could be considered by the hearing officer, **p. 6.**

17. During 2006-07, the Defendant continued in violation of the prior SRO decisions regarding adequacy of the IEP. Defendant refused to pay for Kildonan, regardless of the unappealed SRO decision and order.

18. The District did not correct, revise or modify its IEP for 2005-06 to conform to the State's decision. The plan once again proposed a placement into the public high school with special classes part-time for reading and math (but not English) and general education classes with supplemental services, i.e. consultant teacher services (not resource room support) for social studies, science and English, see page 3, of the unappealed **SRO decision No. 06-005**.

19. On August 18, 2005, the parents once again objected and yet another impartial hearing was undertaken. On March 7, 2006, the SRO issued a final decision holding once again concurring with the parents, declaring that the IEP was inappropriate /inadequate and

holding that the parents' unilateral private school placement at the Kildonan School was appropriate, see **SRO decision No. 06-005, pp 10-12**.

20.    On March 28, 2006, three weeks after receipt of the second SRO decision supporting the student's private placement at Kildonan, the Defendant re-convened its CSE to develop an IEP for the year in question here, 2006-07, see **Parents' Exhibit R**[1].

21.    The parents objected to the Defendant's continued, uncorrected, practice of convening a CSE that lacked essential membership. Defendant had once again not invited critical personnel to the planning meeting on March 28, 2006, see **record of testimony, at transcripts pp. 196-8**. The March 28, 2006 meeting was adjourned.

22.    On March 29, 2006, the parents wrote the Defendant explicitly objecting to the lack of input from critical personnel, including 9th grade teachers, and specifically requesting a proper constituted CSE "*as soon as possible*", **Parents' Exhibit D**. Their request was altogether ignored.

23.    On May 24, 2006, Plaintiffs again provided written notice to the District reiterating their complaints and desire for a new and proper CSE review, see **Parents' Exhibit E**. On July 13, 2006, Plaintiffs again notified the District in writing of their objection to the delay in providing them access to a properly-constituted annual review and valid IEP, **Exhibit F**.

24.    Plaintiffs sent a fourth letter notifying the Defendant of their desire to participate in the IEP development process, see **Exhibit #31**. At this point, the parents asked the Defendant to ensure that current test results available from the student's current school should

---

[1] References to any and all exhibits and/or transcripts of testimony correspond to the administrative record developed before the hearing officer and then reviewed by the SRO. This administrative record shall be filed in its entirety by the State with the Clerk of this Court pursuant to statute.

be obtained by the CSE and reviewed/discussed by the CSE, **see Parents' Exhibit A and M, and Exhibit #31**.

25.  On July 14, 2006, the parents wrote the District to complain about the Defendant School District's failure to pay tuition for 2004-05, per the SRO decision, **Exhibit H**. Defendant's intentional and knowing refusal to acknowledge the SRO decision regarding 2004-05 and 2005-06 created on-going environment of discrimination and exclusion from the IEP development process.

26.  On July 26, 2007, the parents wrote a second letter reiterating their request for the District's consideration of the student's most recent report cards and testing, **Exhibit O**. This too was ignored.

27.  On August 8, 2006, the District conducted testing of the student, see page 3 of **Exhibit R**. The evaluator did not meet with, review or otherwise discuss the results with the parent, **see testimony at p. 612**.

28.  On August 10, 2006, at a CSE meeting called by the, a plan for placing the student at the regular high school was discussed see **testimony at p. 613**.   Once again, there was no contribution from a *"proper regular education teacher"*, see **05-063, p, 8. and transcripts at p. 631, or see Exhibit GG**.  At the meeting, the improper teacher member confirmed that there was no possibility that she would have been the student's teacher", **p. 8**.

29.  On August 10, 2006, altogether ignoring the parents' position regarding the need for continued placement at Kildonan, the CSE yet again proposed the student for a *"placement at CHS [Carmel H.S.]  She will receive Consultant Teacher for all academic classes, Special Class Reading, and Counseling as a Related Service. Goals, program and test modifications*

7

were reviewed", Id. There was no consideration or review of current Kildonan test results nor was new anecdotal information considered, p. 3, **Exhibit 1D**.

30.    The CSE did not consider or include an adequate statement of the student's present performance as required by the SRO, see **p. 3, Exhibit 1D**. At the August 10, 2006 meeting, no test results from Kildonan were reviewed, Id. A high school special education teacher, Ms. Tomassi, globally reviewed the Defendant's August 8th testing data, **transcripts, p. 617**. That explanation confused the parent because only standard scores were available; when she asked about the scoring, the parent was told that a standard score between 90 and 100 was average. Later, she was told that a standard score of 80 was average, Id. The chairperson of that August meeting agreed that review of test scores was *"a little confusing"*, **p. 130**.

31.    On August 10, 2006, the CSE explained to the parent that the proposed placement called for a placement into Defendant's "Consultant Teacher model", defined at 8 NYCRR 200.1 (m) and 200.6(d). The placement was described to the parent *"as 15 children with disabilities, and that there was one teacher, one aide and that there were regular ed. children in the class and that the consultant teacher… said [they] don't let the regular ed. kids know that the disabled children are in the room, and in fact [the special education teacher] tend[s] to work more with the regular ed. children because the disabled children know the ropes"*, **p. 619, also see p. 9, Exhibit GG**.

32.    The CSE advised Plaintiffs that based on the student's standard scores, she would be placed in a consultant teacher model for everything except reading, p. 622. The CSE recommended a goal for the student to assert herself and tell the teacher when and how she

needed IEP-mandated accommodations because the teacher could have as many as 125 students to keep track of, **pp. 623-4**.

33. Plaintiffs were not given a meaningful opportunity to participate in the development of IEP goals, **see p. 615, p. 627**. This substantially impeded their ability to make objections known to the Defendant. When the parent requested access to a copy of the goals that were being selected at the August 10, 2006 meeting for the student, she was given a single page, see **Parents' Exhibit C**. This did not reflect goals and/or objectives. It was merely a long list of school-based skills.

34. The parents were not provided a form of a draft IEP, **p. 539**, and the discussion of goals and objectives was undertaken in code, i.e. goal "147" was proposed for English, **p. 628**. Clearly, the parent was provided no opportunity of participating in this discussion, Id.

35. Plaintiffs were not provided an IEP developed by a proper CSE. At the August 10, 2006 meeting, only a consultant teacher model was considered; the teacher present did not work in any of the Defendant's consultant teacher programs, **p. 630**. She did not participate in the discussion about possible modifications or accommodations to the regular education curriculum, **p. 631, or see Exhibit GG.**

36. The CSE did not consider Kildonan test results as required in the past by the SRO and requested by the parents. The IEP developed by Defendant does not reflect what grade level material the student is capable of reading as previously required by the SRO. She reads 4th – 6th grade level books independently, **p. 633**, yet there was no discussion as to use of a textbook in English or science, **p. 632**.

37.   The CSE only considered one interim report card, (dated February 27, 2006), ignoring Plaintiff's request for consideration of evaluative information available about the student's current placement at Kildonan, **p. 639**.

38.   The CSE never considered the findings and conclusions of the SRO and no one on the CSE had read either of the two existing SRO decisions, **p. 640**.

### THE CLAIM HERE

39.   Based upon the above facts, Plaintiffs' complaint constitutes the same claim as raised for a third time.   The 2006-07 proposal called for placement of the student into the public school with part-time special class (this time only for reading) and general education classes with consultant teacher services for everything else, **Parents' R**. According to the SROs prior decisions, the definition of a free appropriate education for the student in both 7th and 8th grades was at the Kildonan School yet the Defendant failed to consider this as an option.

40.   Plaintiffs and their disabled daughter were denied an appropriate IEP for 2006-07 in precisely the same manner that they were denied appropriate IEPs in 2004-05 and 2005-06. Once again, there was no input from the student's current school or her teachers (i.e. Kildonan). Not one person planning her education knew the student or the contents of the two SRO decisions, **transcripts p. 197**.

41.   Once again the IEP offered to the student here was developed by a CSE that did not include a regular education teacher who might have been assigned to teach the student as required by the prior SRO decisions, **p. 630.**

42.   The Defendant's own conduct compromised the parents' ability to address this. Ten days prior to the start of school when Plaintiffs' notice to the Defendant regarding a

10

possible objection and/or claim 2006-07 was due, no notice of any specific IEP had been offered by Defendants.

43.    On August 23, 2006, Plaintiffs gave their ten-day notice by writing the Defendant School District explaining that they were rejecting the placement as described verbally at the August 10, 2006 CSE meeting and that they would continue the student at Kildonan School for 2006-07 at the District's expense, **p. 649, Joint Exhibit 2A**.  They also submitted the State's form for initiating due process, **Exhibit 2B**.

44.    As of August 23, 2006, the parent still had not been provided any form of an IEP, **pp. 646-7**.  Again, they had requested, but were not provided the following:  notice of specific goals and objectives; an IEP statement of proposed program modifications, and/or a class schedule, **p. 648**.

45.    Plaintiffs received a final IEP on August 27, 2006 and immediately wrote to express further objection to the IEP's reflection of placement into 10th grade English, see **Exhibit S and T**.  The parent also called the District to address specific concerns, **p. 651-2**, i.e. IEP called for the student to attend a 10th grade English classes at the high school.   The CSE did not reconvene nor respond to the parent prior to the start of school.  The CSE did not request clarification of the parents' objections.

46.    The IEP provided at the end of August 2006 was **Exhibit T**, and called for placement into a 10th grade English class, **p. 652**.   The IEP in effect for this eligible handicapped child at the start of the school year called for placement into 10th grade English class.

47.    The parent reiterated the request for impartial hearing on September 15, 2006 stating that the District's plan for placing their daughter into general education classes with

11

consultant teachers who focused their services on the non-disabled students was inappropriate, see **District Exhibit #2C**. This objection was not a new one. This objection was not reviewed or considered by the SRO.

48. By September 15, 2006, the District had full *"awareness and understanding of the issues forming the basis of the complaint"*, **p. 7, SRO Decision 07-114**. It was the third consecutive school year wherein the parents rejected the public school placement in favor of special private day school for dyslexia.

49. Defendant waited until it was too late to move to correct and notify the parents of actual "clerical errors" to the proposed IEP, see earlier correspondence at **Exhibit #32, #45**. The corrected IEP was received on September 14, long after the start of school, and placements had to be made.

50. At hearing, Plaintiffs argued that many of the specific issues raised regarding the 2006-07 IEP had been litigated in prior proceedings and should not be re-heard. They argued the District was on notice of the long-standing objections held by the parents regarding the District's development of IEPs for their disabled child. They argued that further written notice to the District, including any amendments to the "due process complaint" is futile where the District maintains a policy and practice of refusing and/or failing to concern itself with their complaints and corresponding final administrative rulings.

51. The parents' complaints were originally raised and fully litigated in 2004-05, then again in 2005-06. Each time the parents prevailed on their claim and each time the District did not appeal beyond the SRO level. At hearing, the parents argued and prevailed, on their claim that Defendant's 2006-07 IEP denied the student access to a free appropriate public

education. The Defendant offered the student an IEP that was clearly "uninspired" by any of the complaints registered by the parents, and by the corresponding SRO decisions.

52. At the outset of the 2006-07 hearing, the hearing officer understood and observed that the Defendant's objections to the parents' written complaint notice was spurious. The parents received a favorable decision from the Board-appointed impartial hearing officer declaring that the proposed 2006-07 IEP was improper and inappropriate, declaring that the parents' continuation of the student in her current placement at the Kildonan School was proper and holding the District responsible for full tuition. Relief was based upon application of the facts to law and was warranted on all grounds.

53. Herein, the Court is asked to review and reverse the SRO final decision, dated November 14, 2007 at **07-114**. SRO Kelly abused judicial discretion and unfairly penalized the parents for not detailing what they did not yet know was specifically deficient and objectionable about the IEP, **SRO Decision 07-114, p. 6**. It was inequitable and an abuse of discretion to dismiss the hearing officer's findings regarding issues not explicitly "*raised in respondents due process complaint notice*", **p. 7,** where parents had no reasonable prior notice of the IEP details and where the District had received substantial, specific notice via two SRO decisions and correspondence from the parents.

54. The SRO committed error of law in ignoring the unappealed findings and conclusions promulgated by his two prior decisions. Here, Defendant engaged in the same violations yielding multiple defects, procedurally and substantively, in the 2006-07 IEP. The SRO arbitrarily disregarded what he had previously concluded was improper for the student in 2004-05 and 2005-06.

55.  The SRO mischaracterized the evidence here and was too quick to side with the school district.  There was an insufficiency of evaluative information considered at either CSE meeting, and goals and objectives were inappropriate, see **Exhibit T**, and SRO decisions. The CSE failed to carefully or accurately obtain and secure Kildonan test documents critical to the student's performance and did not consider term report cards or assistive technology evaluations.  Indeed, the IEP generated at the meeting references only one interim, teacher report, see February 27th 2006 reports, **Exhibit R, also Exhibit T** ("Based Upon" section).

56.  An allegedly "corrected version" of the IEP document was not prepared or offered to Plaintiffs until after the start of school and not received by the parents until more than 10 business days after notice to the District of their intent to place C.D. at Kildonan, see **Parents' Exhibit 2A and Parents' Exhibit U**.

57.  Plaintiffs selected a near-by school for students with the same type of learning disability that they suspected their daughter to have, i.e. dyslexia.  Plaintiffs reasonably calculated that the student could make progress in the areas of her disability as Kildonan is a school specially established to remediate such deficits.  Kildonan has had thirty years to refine and revise their programs and develop systematic interventions for teaching the dyslexic child. The school is nationally recognized and responsible for providing teacher-training to regional public schools.

58.  Finally, the parents' decision to continue the student at the Kildonan School during 2006-07, and while the District continued in breech of state rulings and law, was justified by the SRO's prior findings of the appropriateness of Kildonan for the student.

**FIRST CAUSE FOR RELIEF**

57.  Plaintiffs carried their burden of proof as to Defendant's failure to comply with mandated procedural safeguards and SRO directives.  The District's failed to convene a properly-constituted CSE team to develop the student's 2006-07 IEP; this constituted a violation of the IDEA and case-specific SRO decisions.  The District failed to review, consider or discuss available test results and failed to provide meaningful interpretive information about psychometrics, i.e. standard scores.  The District failed to include an adequate statement of the student's present performance and failed to develop appropriate goals and short-term objectives.

58.  Based upon the above facts, the improper CSE composition, the insufficiency of the evaluations considered by the CSE and the inappropriateness of the goals and objectives listed in the IEP, all constitute a denial of a free appropriate public education.  This denial warrants appropriate relief pursuant to the Individuals with Disabilities Education Act, ("IDEA") 20 U.S.C. §1400, et seq.

**SECOND CAUSE FOR RELIEF**

59.  Plaintiffs carried their burden of proof as to compliance with mandated substantive safeguards.  The IEP failed to offer the student a level of specially-designed supports to enable her to carry a regular high school course load, i.e. she had been appropriately removed from the regular high school for both 7th and 8th grades.  No evaluations supported a change in placement back to regular education.  Further, the IEP improperly called for the student to attend 10th grade English class, a level beyond her ability.  T

60.  Based upon the above facts, the proposed IEP, including placement, statement of needs and the goals and objectives are substantively inappropriate and constitute a denial of a

free appropriate public education.  This denial warrants appropriate relief pursuant to the

Individuals with Disabilities Education Act, ("IDEA") 20 U.S.C. §1400, et seq.

## THIRD CAUSE FOR RELIEF

61.  At hearing, Plaintiffs established that the Kildonan School was both appropriate

and least restrictive given the student's severe deficits in math, writing, reading and spelling.

Updated evaluative information reflects that the student thrived in that restrictive setting and

that those professionals familiar with her and her disabilities recommended and continue to

recommend that she receive that level of support.

62.  Based upon the above facts, the proposed IEP, including placement, statement of

needs and the goals and objectives are substantively inappropriate and constitute a denial of a

free appropriate public education.  This denial warrants appropriate relief pursuant to the

Individuals with Disabilities Education Act, ("IDEA") 20 U.S.C. §1400, et seq.

## FOURTH CAUSE FOR RELIEF

63.  The equities weigh heavily in favor of granting Plaintiffs the requested declaratory

relief that Defendant failed to provide a free appropriate public education prior to the start of

the 2006-07 school year and that the student was properly placed by her parents that year at

the Kildonan School.

64.  Based upon the above facts, the Defendant violated Plaintiffs', and the student's,

right to a proper and appropriate IEP pursuant to the Individuals with Disabilities Education

Act, ("IDEA") 20 U.S.C. §1400, et seq, the federal regulations promulgated thereunder, Article

89 of the New York State Education Law, and the Regulations of the Commissioner of

Education, Part 200.    Defendant school district violation of the IDEA and case-specific

administrative rulings, constituted a denial of a free appropriate public education.

63. Plaintiffs are herein entitled to all appropriate relief available under its provisions.

**WHEREFORE**, Plaintiffs respectfully request the following relief from the Court:

1. Assume jurisdiction over this action;

2. Conduct an independent review of both the administrative record, the three SRO decisions relevant to this case and supplementary evidence provided by Plaintiff;

3. Reverse and annul the decision of the State Review Officer denying deference to his findings;

4. Declare that the IEP developed for the 2006-07 school year continued to be inappropriate, procedurally and substantively;

5. Declare that parent's decision to maintain the student in her IDEA placement at the Kildonan School was proper and appropriate;

6. Declare that equitable considerations require declaratory relief;

7. Grant such other, further and different relief as the Court deems just and proper.

Dated:  January 14, 2008                    Submitted by,

                                            RosaLee Charpentier, Esq.

                                            Bar roll # RLC-2515

                                            Family Advocates, Inc.

                                            **209 Clinton Avenue,**

                                            **Kingston, NY 12401**

                                            **Tel.: (845) 339-8080**

17