

08 CV. 445 (KMK)



# The University of the State of New York

### The State Education Department
### State Review Officer

*U.S. DISTRICT COURT FILED MAY 14 2008 S.D. OF N.Y. W.P.*

No. 07-114

**Application of the BOARD OF EDUCATION OF THE CARMEL CENTRAL SCHOOL DISTRICT for review of a determination of a hearing officer relating to the provision of educational services to a child with a disability**

**Appearances:**
Shaw, Perelson, May & Lambert, LLP, attorney for petitioner, Michael K. Lambert, Esq., of counsel

Family Advocates, Inc., attorney for respondents, RosaLee Charpentier, Esq., of counsel

### DECISION

Petitioner, the Board of Education of the Carmel Central School District, appeals from the decision of an impartial hearing officer which found that it failed to offer an appropriate educational program to respondents' daughter and ordered it to reimburse respondents for their daughter's tuition costs at the Kildonan School (Kildonan) for the 2006-07 school year. The appeal must be sustained.

Preliminarily, I will address a procedural issue. The regulations of the Commissioner of Education provide that a memorandum of law shall not exceed 20 pages in length (8 NYCRR 279.8[a][5]), and specifically state that documents that fail to comply with the form requirements may be rejected in the sole discretion of a State Review Officer (8 NYCRR 279.8[a]; <u>Application of a Child with a Disability</u>, Appeal No. 06-065; <u>Application of the Bd. of Educ.</u>, Appeal No. 04-080). The memorandum of law that respondents submitted at the time of their answer exceeded 20 pages in length and was rejected. Although respondents subsequently filed with the Office of State Review an amended memorandum of law consisting of 20 pages, the amended memorandum of law did not comply with the font size and line spacing requirements of the state regulations (8 NYCRR 279.8[a][2]). Therefore, in the exercise of my discretion, I reject respondents' amended memorandum of law and will not consider the document.

2006 CSE would schedule another meeting with representatives from petitioner's high school to finalize the student's IEP (id.).

Achievement testing of the student by Kildonan in May 2006 yielded standard (and percentile) scores of 86 (18) in word identification and 97 (41) in word attack, as measured by the Woodcock Reading Mastery Test-R/NU; and 8 (25) in rate, 7 (16) in accuracy, and 6 (9) in fluency as measured by the Gray Oral Reading Test-Fourth Edition (Dist. Ex. 39a at p. 73). On the Test of Written Spelling-4, the student achieved a standard (and percentile) score of 90 (26) (id.). Administration of the Gates-MacGinitie Reading Tests-Fourth Edition yielded grade equivalent (and percentile) scores of 6.9 (33) in vocabulary and 10.2 (63) in comprehension (id.). In the area of mathematics, the student achieved grade equivalent (and percentile) scores of 10.2 (63) in problem solving, 6.9 (27) in procedures, and a total score of 8.7 (48), as measured by the Stanford Achievement Test (id. at p. 74).

The June 2006 progress reports from Kildonan indicated that the student received grades of B in math, B+ in literature, B in history, and C in science (Dist. Ex. 39a at pp. 67-70). The Kildonan instructor who provided individual language training tutorials to respondents' daughter, reported that the student's scores on the diagnostic testing administered in May 2006 revealed significant gains in her reading rate, accuracy, and fluency; great improvement in spelling; and gains in both reading comprehension and word attack (id. at p. 66).

Petitioner conducted an educational evaluation of the student on August 8, 2006 (Dist. Ex. 33). Administration of Form A of the Woodcock-Johnson III Tests of Achievement (WJ III) yielded standard scores in broad reading and broad written language consistent with previous testing completed by petitioner in June 2004, with some increase in each area (id. at p. 1). The student achieved standard (and percentile) subtest scores of 90 (25) in letter-word identification, 85 (16) in reading fluency, 91 (26) in story recall, 112 (78) in understanding directions, 88 (21) in calculation, 63 (1) in math fluency, 88 (22) in spelling, 80 (9) in writing fluency, 96 (39) in passage comprehension, 93 (31) in applied problems, and 118 (88) in writing samples (id. at p. 4). The evaluator determined that compared to other students her age, the student exhibited average English oral language skills, low average academic skills, an average ability to apply academic skills, and that her fluency with academic tasks was low (id. at p. 3). No discrepancies were noted among her achievement areas (id.).

The CSE reconvened on August 10, 2006 to finalize the student's IEP for the 2006-07 school year (ninth grade) (Dist. Ex. 1d). The August 2006 CSE recommended that the student be placed at petitioner's high school and recommended a program of consultant teacher support for English, math, science, and social studies; special class reading daily; and counseling one time per week in a small group (id. at pp. 1-2.). Program modifications included refocusing and redirection, preferential seating, copy of class notes, extended time for in class assignments, books on tape, use of a calculator, and modified homework assignments (id. at p. 2). Assistive technology devices and services included use of a word processor, books on tape, and an unspecified assistive technology consultation (id.). The student was afforded the following testing modifications: extended time (1.5); directions read/explained; clarification of test questions; special location; spelling requirements waived; and use of a word processor (id.). The

burden of demonstrating the inappropriateness of the August 2006 IEP, that petitioner offered the student an appropriate program for the 2006-07 school year, and that respondents failed to demonstrate that Kildonan was an appropriate placement.

In their answer, respondents request that the impartial hearing officer's decision be upheld in its entirety and that petitioner's appeal be dismissed.

The central purpose of the Individuals with Disabilities Education Act (IDEA) (20 U.S.C. §§ 1400-1482) is to ensure that students with disabilities have available to them a FAPE (20 U.S.C. § 1400[d][1][A]; see Schaffer v. Weast, 546 U.S. 49, 51 [2005]; Bd. of Educ. v. Rowley, 458 U.S. 176, 179-81, 200-01 [1982]; Frank G. v. Bd. of Educ., 459 F.3d 356, 371 [2d Cir. 2006]). A FAPE includes special education and related services designed to meet the student's unique needs, provided in conformity with a written IEP (20 U.S.C. § 1401[9][D]; 34 C.F.R. § 300.17[d];[3] see 20 U.S.C. § 1414[d]; 34 C.F.R. § 300.320).

A FAPE is offered to a student when (a) the board of education complies with the procedural requirements set forth in the IDEA, and (b) the IEP developed by its CSE through the IDEA's procedures is reasonably calculated to enable the student to receive educational benefits (Rowley, 458 U.S. at 206-07; Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 [2d Cir. 2005]). While school districts are required to comply with all IDEA procedures, not all procedural errors render an IEP legally inadequate under the IDEA (Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 381 [2d Cir. 2003]; Perricelli v. Carmel Cent. Sch. Dist., 2007 WL 465211, at *10 [S.D.N.Y. Feb. 9, 2007]). Under the IDEA, if a procedural violation is alleged, an administrative officer may find that a student did not receive a FAPE only if the procedural inadequacies (a) impeded the student's right to a FAPE, (b) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE to the child, or (c) caused a deprivation of educational benefits (20 U.S.C. § 1415[f][3][E][ii]; 34 C.F.R. § 300.513[a][2]; Matrejek v. Brewster Cent. Sch. Dist., 471 F. Supp. 2d 415, 419 [S.D.N.Y. 2007]).

The IDEA directs that, in general, an impartial hearing officer's decision must be made on substantive grounds based on a determination of whether the child received a FAPE (20 U.S.C. § 1415[f][3][E][i]). A school district offers a FAPE "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction" (Rowley, 458 U.S. at 203). However, the "IDEA does not itself articulate any specific level of educational benefits that must be provided through an IEP" (Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 130 [2d Cir. 1998]; see Rowley, 458 U.S. at 189). The statute ensures an "appropriate" education, "not one that provides everything that might be thought desirable by loving parents" (Walczak, 142 F.3d at 132, quoting Tucker v. Bay Shore Union Free Sch. Dist., 873 F.2d 563, 567 [2d Cir. 1989] [citations omitted]; see Grim, 346 F.3d at 379). Additionally, school districts are not required to "maximize" the potential of students

---

[3] The Code of Federal Regulations (34 C.F.R. Parts 300 and 301) has been amended to implement changes made to the IDEA, as amended by the Individuals with Disabilities Education Improvement Act of 2004. The amended regulations became effective October 13, 2006. For convenience, citations in this decision refer to the regulations as amended because the regulations have been reorganized and renumbered.

U.S.C. § 1415[c][2][E]), or the other party otherwise agrees (20 U.S.C. § 1415[f][3][B]). The Senate Report pertaining to this amendment to the IDEA noted that "the purpose of the sufficiency requirement is to ensure that the other party, which is generally the school district, will have an awareness and understanding of the issues forming the basis of the complaint" (S. Rep. 108-185, Individuals with Disabilities Education Act Senate Report No. 108-185, "Notice of Complaint," [November 3, 2003]). The Senate Committee reiterated that they assumed with the earlier 1997 amendments' notice requirement that it "would give school districts adequate notice to be able to defend their actions at due process hearings, or even to resolve the dispute without having to go to due process" (id.). In the instant case, a review of respondents' due process complaint notice reveals that they specifically alleged three substantive violations regarding the student's August 2006 IEP (Dist. Ex. 2b). The due process complaint notice does not include any allegations pertaining to the appropriateness of the goals or present levels of performance in the August 2006 IEP (id.). During the impartial hearing, counsel for respondents questioned the propriety of the goals listed in the June 2006 IEP, at which time petitioner's counsel objected, noting that the issue was not properly before the impartial hearing officer because it had not been raised in respondents' due process complaint notice (Tr. pp. 171, 1031, 1038-39). The impartial hearing officer allowed counsel for respondents to question the witnesses on the development and appropriateness of the goals in the August 2006 IEP, and further determined that he had subject matter jurisdiction with respect to this issue, although it was not raised in respondents' due process complaint notice. The impartial hearing officer also permitted witnesses to testify in response to questions from respondents' counsel regarding procedural matters that were not contained in the due process complaint notice over the objections of petitioner's counsel (Tr. pp. 583-88, 676-78, 689). Furthermore, the impartial hearing officer assumed subject matter jurisdiction with respect to the student's present levels of performance in the August 2006 IEP even though it was not raised in respondents' due process complaint notice or at the impartial hearing. A review of the hearing record also indicates that at no point during the impartial hearing did respondents' counsel amend the due process complaint notice, nor did she make any request to do so. Under the circumstances, I agree with petitioner that the impartial hearing officer should have confined his determination to issues raised in respondents' due process complaint notice (see 20 U.S.C. § 1415[c][2][E], [f][3][B]; 34 C.F.R. §§ 300.508[d][3], 300.511[d]; 8 NYCRR 200.5 [i][7][i], [j][1][ii]; Application of a Child with a Disability, Appeal No. 07-051; Application of a Child with a Disability, Appeal No. 07-047; Application of a Child with a Disability, Appeal No. 06-139; Application of a Child with a Disability, Appeal No. 06-065; Application of a Child with a Disability, Appeal No. 04-019; Application of a Child with a Disability, Appeal No. 03-095; Application of a Child with a Disability, Appeal No. 02-024; Application of a Child with a Disability, Appeal No. 01-024; Application of a Child with a Disability, Appeal No. 99-060).

Petitioner further contends that the challenged IEP for the 2006-07 school year was appropriate and would have led to continued educational gains for the student. For the reasons discussed below, I agree.

The CSE convened on March 28, 2006 for the student's annual review and to develop her IEP for the 2006-07 school year (Dist. Ex. 1c). The hearing record reflects that the May 2006 CSE reviewed reports from the student's teachers at Kildonan and determined that she had made excellent progress in language training, math, literature, and history, but that science was more

7

teachers regarding the student's progress and level of motivation, and the student's ability to understand language and the curriculum (Tr. pp. 419-20). Accommodations and modifications, in addition to those specified on a student's IEP, such as a reading station that students can report to when they are having difficulty reading or writing in a class or are taking a test, are available to students throughout the day (Tr. pp. 889-92). The CSE chairperson testified that after school help is also available to all students and is provided by a group of five teachers, including a special education teacher (Tr. p. 445).

     The special reading class proposed for the student is taught by a special education teacher certified in levels one and two of the Wilson reading program (Wilson) (Tr. pp. 876-77). She described Wilson as a systematic language-based program based on the Orton-Gillingham methodology used specifically with adolescents who have problems with decoding, encoding, and reading fluency (Tr. pp. 877-79). The special reading class recommended for the student meets daily for 40 minutes and is comprised of seven students who all exhibit difficulty with decoding, spelling, and their reading fluency (Tr. pp. 881, 884). The reading teacher administers pre-tests at the start of the school year and assesses the students' progress on a daily basis (Tr. pp. 902, 929-932). The special education reading teacher testified at length about how she would address the student's reading and writing deficits including methods of direct instruction, assessment of progress, and use of assistive technology and opined that the content taught was the same as what the student had been taught at Kildonan (Tr. pp. 885-89, 897, 928-29; see Dist. Ex. 39d). Within the special reading class, the student would have received both individual and group instruction dependent upon her areas of need and those of the other students in the class (Tr. pp. 902, 911, 926). The special education reading teacher testified that she meets with the special education consultant teachers every other day to discuss students and use of assistive technology programs and accommodations (Tr. pp. 940-41).

     The student's cognitive functioning is in the average range (full scale IQ score 105) and the results of educational achievement testing completed two days prior to the August 2006 CSE meeting indicate that compared to other students her age, she exhibits skills primarily in the low average to average range with relative strengths in understanding directions and writing samples (above average) and relative weakness in math fluency (low) (Dist. Exs. 29 at p. 4; 33 at p. 4). Her oral language skills are average as is her ability to apply academic skills (Dist. Ex. 33 at p. 4). Petitioner's director of pupil services testified that the student has the ability to understand what is said and can participate commensurate with her cognitive ability (Tr. p. 1093). The special reading class teacher testified that the student's passage comprehension and oral language standard scores indicated that she could absorb the material presented in a regular education classroom at the same rate as other students (Tr. p. 892; see Dist. Exs. 39d; 39e). Progress reports from the student's instructors at Kildonan indicated the student performed satisfactorily, was typically prepared for class, and that she demonstrated the willingness and initiative to improve her grades when needed (Dist. Ex. 39a at pp. 59-64). The Kildonan instructor who provided individual language training tutorials to respondents' daughter reported that the student's scores on diagnostic testing administered in May 2006 revealed significant gains in her reading rate, accuracy, and fluency; great improvement in spelling; and gains in both reading comprehension and word attack (id. at p. 66). The Kildonan academic dean testified that the student demonstrated "substantial growth" in comprehension and vocabulary (Tr. p. 322).

Global statements such as "[the student's] cognitive abilities are average with the exception of processing speed" and "[the student's] reading and writing skills are below average," by themselves do not clearly convey the student's present levels of educational performance nor identify the specific deficits that need to be addressed (Dist. Ex. 1d at p. 3). However, here the inclusion of the student's subtest standard scores provides additional details necessary to identify the specific areas within reading, math, and writing that require remediation and provides a baseline from which to project goals (id.). Furthermore, there is ample evidence in the hearing record indicating that at the March 2006 CSE meeting, the CSE reviewed progress reports from Kildonan and discussed the student's present levels (Tr. pp. 194, 197, 225) and that at the August 2006 CSE meeting, the student's present levels of performance were reviewed and discussed in detail by the special education teacher who would have taught the student in math (Tr. pp. 425, 960; Dist. Ex. 42 at pp. 1-6). Although the student's present levels of performance as written on the August 2006 IEP do not, standing alone, comply with the requirements of federal and state law (34 C.F.R. § 300.320[a][1]; 8 NYCRR 200.4[d][2][i]), for the reasons discussed above, this did not impede the student's right to a FAPE, significantly impede respondents' opportunity to participate in the decision-making process regarding the provision of a FAPE to the student, or cause a deprivation of educational benefits to the student (20 U.S.C. § 1415[f][3][E][ii]; 34 C.F.R. § 300.513[a][2]; O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233, 144 F.3d 692, 703-04 [10th Cir. 1998]; Application of the Bd. of Educ., Appeal No. 07-043; Application of the Bd. of Educ., Appeal No. 04-031; compare Application of the Bd. of Educ., Appeal No. 02-025, with Application of a Child with a Disability, Appeal No. 04-046). I therefore caution petitioner that it is required to develop present levels of performance in the student's IEP consistent with federal and state regulations (34 C.F.R. § 300.320[a][1]; 8 NYCRR 200.4[d][2][i]).

As a final matter, I note that petitioner was remiss in not filing the record of the proceeding before the impartial hearing officer together with the petition for review as required by section 279.9(b) of the regulations of the Commissioner of Education. I caution petitioner to comply with Part 279 of the state regulations pertaining to the filing of a hearing record.

**THE APPEAL IS SUSTAINED.**

**IT IS ORDERED** that the impartial hearing officer's decision dated August 24, 2007 is annulled to the extent that it determined that petitioner did not offer the student a FAPE for the 2006-07 school year and granted respondents' request for tuition and transportation reimbursement for that year.

Dated:   Albany, New York
         November 14, 2007

PAUL F. KELLY
STATE REVIEW OFFICER

11