UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

LAURA DAVIS and EDWARD DABROWSKI

           as parents of a disabled student, C.D.

                Plaintiffs,


        -against-                        **INDEX NO. 7:08 cv 0445**


CARMEL CENTRAL SCHOOL DISTRICT,

Defendant.

-------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS**

**MOTION FOR PRELIMINARY INJUNCTION DEFINING THE**

**STUDENT'S PENDENCY PLACEMENT**


                            RosaLee Charpentier, Esq.

                            Attorney for family

                            Family Advocates, Inc.

                            209 Clinton Avenue

                            Kingston, New York 12401

## DECISIONS

2004-05 Claim Initiated on August 19, 2004

Impartial Hearing Officer Decision          Dated:  May 19, 2005          re:  2004-05

State Review Officer Decision No. 05-063  Dated:  August 10, 2005          re:  2004-05

No Appeal Taken (final, unappealed decision is Dec. 05-063)   *HELD FOR PARENTS*


2005-06 Claim Initiated on August 18, 2005

Impartial Hearing Officer Decision          Dated:  November 23, 2005   re:  2005-06

State Review Officer Decision No. 06-005  Dated:  March 6, 2006          re:  2005-06

No Appeal Taken (final, unappealed decision is Dec. 06-005)   *HELD FOR PARENTS*


2006-07 Claim Initiated on August 23, 2006

Impartial Hearing Officer Decision          Dated: August 24, 2007      re:  2006-07

                                            *HELD FOR PARENTS*

State Review Officer Decision No. 07-114  Dated:  November 14, 2007   re:  2006-07

                                            *HELD AGAINST PARENTS*

U.S.D.C., S.D.N.Y., Index No. 7:08 CV 0445          (pending)          re:  2006-07

                                            *PENDING*

## **PRELIMINARY STATEMENT**

Plaintiffs are the parents of a disabled child classified under the Individuals with Disabilities Education Act, (IDEA) by the Defendant Carmel Central School District (District) as Learning Disabled.  Congress enacted the IDEA '*to assure that all children with disabilities have available to them… a free appropriate public education which emphasizes special education and related services designed to meet their unique needs*" Cedar Rapids Cmty. Sch. Dist. V. Garret F. 526 U.S. 66, at 68, 119 S. Ct. 992 (1999) (quoting 20 U.S.C. Section 1400(c).

The centerpiece of the law's education delivery system is the "*individualized education program*", (IEP), Honig v. Doe, 484 U.S. 305, at 311 108 S. Ct. 592 (1988).  The disabled child's IEP must be "reasonably calculated to enable the child to receive educational benefit." Rowley, 458 U.S. at 207.  The IEP must be "likely to produce progress, not regression or trivial educational advancement." Board of Education v. Diamond, 808 F.2d 987, 991 (3d Cir. 1986).  The IEP is the result of collaborations between parents, educators, and representatives of the school district.  It "*sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives.*" Id.  Chloe's parents have rejected the Carmel School District's IEP each year since 2004-05.  Their rejection of the 2006-07 IEP that is now before this Court.

The IDEA's assurance that disabled children have access to FAPE from their local school districts resulted from a congressional determination that

"*handicapped children were not being properly educated…. that the problem was the result not only of financial constraints at state and local levels but was due to state and local laws which enabled school districts to exclude children without consultation with their parents.*" <u>Thomas v. Cincinnati Board of Education</u> 918 F.2d 618,619 (6th Cir. 1990).

Concerned that requiring parental input into the development of the IEP would not be sufficient to safeguard a child's right to a free and appropriate education, Congress included within the law explicit procedural safeguards that enable parents to reject and challenge the school district's decisions, <u>Murphy v. Arlington C.S.D.</u> 297 F. 3d 195 (2002), citing 20 U.S.C. Section 1415. The law establishes an elaborate system of administrative and judicial review of parent-challenged educational decisions. New York has adopted a two-tier system of administrative review, N.Y. Edc. Law Section 4404. First, the parents bring their complaint to a locally-appointed hearing officer, and then aggrieved parties may pursue an appeal to a state review officer, ("SRO"), see Ed. Law, Article 89 at section 4404(2)-(4). Then, the aggrieved parties may take an appeal to state or federal court via the State's Civil Procedure Law & Rules, at CPLR Article 4 (replacing the previously-used Article 78), <u>Id</u>. Chloe's parents have sought access to these procedures to challenge the District's 2006-07 IEP.

The Act's procedures are integral to the definition of FAPE and as important as the provision of services. Federal funding to both state and local educational agencies is conditioned upon state compliance with IDEA's extensive

substantive and procedural requirements, 20 U.S.C. § 1400(c), 1412(5)(B).   See

for example: "*The Act's procedural guarantees are not mere procedural hoops*

*through which Congress wanted state and local educational agencies to jump.*

*Rather, 'the formality of the Act's procedures is itself a safeguard against*

*arbitrary or erroneous decision making.*' " Daniel R.R. v. State Board of Educ.,

874 F.2d 1036, 1041 (5th Cir. 1989) (quoting Jackson v. Franklin County School

Board, 806 F.2d 623, 630 (5th Cir. 1986).   Also see Rowley, 458 U.S. at 102

("*the importance Congress attached to these procedural safeguards cannot be*

*gainsaid.*")

This Motion for interlocutory relief is necessary because Chloe's right to

these important procedural safeguards has been violated.   On August 23, 2006,

the parents invoked their right to challenge the proposed; from that day forward,

the District has acted in violation of IDEA regarding procedures for administrative

and judicial review.

Specifically, the District has violated one of the highly specific procedural

safeguards mandated by the IDEA, known as the "pendency" provision,[1] at 20

U.S.C. 1415(j).[2]  The safeguard reads as follows:

> *During the pendency of any proceedings conducted pursuant to this*
> *section, unless the State or local educational agency and the*
> *parents or guardian otherwise agree, the child shall remain in the*
> *then current educational placement of such child ... until all such*
> *proceedings have been completed.*

---

[1] Also referred to as "status quo" or "stay-put" provision.
[2] See State counter-part at 8 NYCR 200.5(m).

"*Under the IDEA, during the pendency of any proceeding pursuant to special education law, a student is entitled to remain in his/her then current educational placement unless the parents and the school district decide otherwise*", Verhoeven v. Brunswick School Committee, 207 F.3d 1, 3 (1st Cir. 1999). Note the caveat that the parties may agree to a placement other than the one to which the student is entitled under the provision, Id.

At the time Chloe's parents initiated the instant proceeding on 2006-07, her then current educational placement was defined by a March 17, 2006 SRO decision. That decision, which reviewed the parents' challenge to the prior year's IEP, (2005-06) imposed a legal change in the student IDEA placement from the CSE-recommended IEP to the parent-preferred special private school, the Kildonan School. Thus, for purposes of identifying the pendency for future disputes, i.e. the dispute now pending before this Court, the District was required to maintain Chloe at the Kildonan School. It has failed to do so.

### STATEMENT ON PLAINTIFFS' MOTION
### FOR PRELIMINARY INJUNCTION

While the Plaintiffs (parents) here call their motion one for preliminary injunctive relief, the usual standards for such judicial relief do not apply. In Zvi D. v. Ambach, the Second Circuit Court held that the current educational placement is the IDEA placement existing at the time the dispute arose and that it is meant to serve as an "*automatic preliminary injunction*" 694 F. 2d 904 (2d Cir. 1982). In Drinker v. Colonial School Dist., the Third Court noted that the IDEA's pendency

provision is intended to be imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships, Id. 78 F.3d 859 [3d Cir. 1996].   In Monahan v. Nebraska, the Ninth Circuit found the language of the statute to absolutely favor continuation of the child's pendency placement, or the status quo, and that thereunder the courts had no discretion to look for, or require, irreparable harm, 491 F. Supp. 903 F. 2d 635 (9th Cir. 1990), at 1088.

In addition, Plaintiffs cannot be required to first bring their claims regarding violations of the pendency provision through the state's two-tiered, administrative review process, Murphy v. Arlington C.S.D., 297 F. 3d 195 (2002).   There, the Court ruled that the "*administrative process is 'inadequate' to remedy violations of Section 1415(j) because, given the time-sensitive nature of the IDEA's stay-put provision, 'an immediate appeal is necessary to give realistic protection to the claimed right'*", citing Miss America Org. V. Mattel, Inc. 945 F. 2d 536, at 545 (2d Cir. 1991).

## BACKGROUND ON THE FACTS

Plaintiffs challenge to the Defendant's proposed special education plan actually began nearly four years ago when they first asserted their disagreement with the District's programming and requested administrative review; IDEA complaint procedures were exhausted at that time to define FAPE for the student during 2004-05.   On August 19, 2004, the parents initiated IDEA due process procedures to obtain and impose a change in the District's special education

programming.  The parents explicitly rejected the 2004-05 IEP because it called for placement of their severely learning disabled child into the local public school with special classes part-time for English, math and reading and with general education classes with only resource room support for social studies and science.

The parents requested an order from administrative review officer(s) requiring placement into a special school with one-to-one instruction for language arts.  Pending their challenge to the public school's recommended placement, the parents placed the student in their preferred placement, the Kildonan School; they sought tuition reimbursement as contemplated by the IDEA and U.S. caselaw, see 20 U.S.C 1412(a)(10)(C)(iii); School Comm. of the Town of Burlington, Massachusetts v. Dep't. of Educ., 471 U.S. 359, 105 S.Ct. 1996 (1985); and Florence County District Four et al. v. Carter by Carter, 510 U.S. 7 (1993).

Located in Amenia, New York, Kildonan School is a nationally-recognized private school dedicated to the plight of severely language-based, learning disabled children (a.k.a. dyslexia). It was founded by Diana King, a colleague of both Dr. Samuel Orton and Anna Gillingham.  The Kildonan School offers highly specialized instruction to students from grades 2 to 12; its entire program is designed to address the needs of students with severe reading and language arts disabilities.  All teachers are trained and supervised in the use and application of Orton-Gillingham teaching protocols and techniques.

On August 10, 2005, the State Education Department, through its State Review Officer ("SRO"), affirmed the parents' position in a decision which declared the District's IEP to be inappropriate and declared that the "*unilateral placement [at Kildonan] was appropriate*", **SRO decision No. 05-063**, attached to the Complaint. This unappealed decision directed full tuition reimbursement for Chloe's placement at Kildonan.

That final, unappealed SRO decision caused a change in the definition of a free appropriate public education ("FAPE") for this student from programming in large groups at the public school to small-group and individualized programming at a special school for students with learning disabilities. Only an agreement between the parents and the school, another unchallenged IEP, or another unappealed, final decision could operate to change the student's placement from Kildonan back to the public school.

The SRO Decision No 05-003 meant that the District was now responsible for funding the Kildonan placement. Ignoring the decision, the District proposed an IEP for 05-06 that would change the status back to public school. On August 18, 2005, the parents requested a second IDEA due process review, specifically notifying the District they would continue to reject their 2005-06 IEP, and continue the Kildonan placement at public expense. Thus, there was no agreement to change Chloe's placement back to the District's preferred setting.

The SRO decision, 05-063, by New York State law[3] became a "*final, unappealed decision*" four (4) months from its issuance, August 10, 2005, and

---

[3] see Ed. Law 4404(3)(b) for statute of limitations on appeals from the SRO.

constituted an unchallenged change in the definition of FAPE for the student. The parents kept Chloe at Kildonan while a second administrative proceeding was undertaken regarding 2005-06.

At the outset of proceedings on 2005-06, the parents asserted the pendency provision. With the oversight of a new hearing officer, on September 22, 2005, the District began making 2005-06 tuition payments for Chloe to attend the Kildonan School, see **Plaintiffs' Affidavit, paragraph 9, and Exhibit A, attached thereto**.

On March 7, 2006, the SRO issued a decision on the 2005-06 proceeding holding for a second time that the District's IEP was inappropriate and that the parent-preferred placement at the Kildonan School constituted FAPE for the student; full tuition reimbursement, already being paid by the District under the pendency provision, was also ordered, see **pages 10-12, SRO decision No. 06-005, attached to the Complaint**.

### FACTS SPECIFIC TO THE YEAR IN QUESTION: 2006-07

On March 28, 2006, three weeks after receipt of the second SRO decision supporting placement at Kildonan, the District offered an IEP for 2006-07 stating that it "*agrees on placement at CHS [Carmel H.S.] She will receive Consultant Teacher for all academic classes, Special Class Reading, and Counseling as a Related Service. Goals, program and test modifications were reviewed*". Thus, the District's proposal remained the same and the parents continued their

challenge. The parents objected and requested the proposed recommendations for 2006-07 be reconsidered.

On August 10, 2006, the District reconvened but merely approved the prior proposal. For a third time, the District ignored the parents' position and the unappealed administrative decisions regarding the student's need for intensive special school placement and put forward the same proposal for placement of the student to the public school with part-time special class (this time only for reading) and general education classes with consultant teacher services for everything else.

On August 23, 2006, the parents formally rejected the proposed 2006-07 IEP and placement; they requested a third impartial hearing on their claim that the student required a more intensive placement than available at the public school. It was this objection and initiation of administrative proceedings which dictates the student's pendency placement in the instant action.

The claim raised by the parents in this federal court action is the claim raised on August 23, 2006, that is, the dispute regarding 2006-07 is still pending. Plaintiffs' disabled child is entitled to be maintained until their 2006-07 compliant is fully and finally resolved. In this motion for preliminary injunctive relief, the parents seek a judicial directive identifying the Kildonan School as the student's pendency placement beginning at the time they requested the underlying impartial hearing on August 18, 2006 and continuing, uninterrupted, through a final, unappealed administrative and/or judicial decision.

## A.  ADMINISTRATIVE PROCEEDINGS AND PENDENCY PAYMENTS

The third impartial hearing (regarding the 2006-07) year was undertaken before impartial hearing officer Martin Kehoe.  Again, it is the claim heard by Mr. Kehoe which is currently outstanding, unresolved and pending.   Under the IDEA's pendency provision, the District was required to maintain the student's placement in her then current educational placement, i.e. the most recent unappealed, final decision as issued by the SRO decision of March 7, 2006.

Regardless of the law, the District failed to make any payments towards the student's 2006-07 tuition at any time during the months of September, October, November or December 2006, see **Plaintiffs Affidavit at paragraph 16**, with attachment.  It was only with the oversight of the hearing officer, M. Kehoe, that the District, on January 31, 2007, initiated tuition payments to Kildonan, see **Plaintiffs Affidavit, paragraph 17, and Exhibit B**.  This six month delay in funding for the student's education, seriously strained relations between the parents and Kildonan.

Eight months after the District received the request for hearing, the third and underlying impartial hearing commenced.  None of this delay was objected to or suggested to be the fault of the parents.  In the interim, the District continued to make monthly payments towards Chloe's 2006-07 Kildonan tuition. On August 24, 2007, the impartial hearing officer issued a decision concluding once again that the student had been denied access to a free appropriate public education and declaring that the Kildonan School was the appropriate placement. Pursuant to 8 NYCRR 279.2(c), the District had until September 30, 2007 to

initiate an appeal. They waited until the very last day to serve the parents with a Petition to the SRO.

In the interim, the District did not acknowledge the hearing officer Kehoe's decision to be binding upon them; they did not share the decision with its CSE nor reconvene to adjust its 2007-08 IEP. In the 40 days between the hearing officer's decision favoring Kildonan and the appeal to the SRO, the District did not respect Mr. Kehoe's decision as a "*final, unappealed decision*".

The 2007-08 school year had begun and yet the District failed to make provision for payment to Kildonan; non-payment of tuition continued throughout the month of September, 2007, see **Plaintiffs' affidavit paragraph 23**.  During this time, the impartial hearing officer's decision stood as the most recent, unappealed decision, dictating  FAPE to be the Kildonan School. Moreover, as an opportunity for appeal was still pending, the last agreed upon placement, or last unappealed decision, was that dictated by the SRO on March 7, 2006, **Dec. No. 06-005**.

Kildonan sent notices of the outstanding tuition due to the District's administrator, Kathy Rohe, and to the parents, see **Plaintiffs affidavit, paragraph 24**.  The parents repeatedly wrote to inquire as to the District's tuition payment plans believing that pendency was required because proceedings on 2006-07 were still pending.  The 2007-08 school year continued with Chloe attending Kildonan and yet the District still failed to make provision for payment of her tuition; non-payment of tuition continued throughout the months of October 2007 and November, 200.  Thus, while the District's appeal to the SRO was

13

pending in October, and November, no tuition payments were made to or received by the Kildonan School, **Exhibit J**.

By failing to ensure funding for the maintenance of the student in her placement at Kildonan during September, October and November, 2007, the District threatened the student's educational stability and violated the pendency provision of the IDEA.

On November 17, 2007, the parents wrote the District regarding their objections to its non-compliance with the pendency provision of the IDEA, see **Plaintiffs' affidavit, paragraph 27, Exhibits I and J**. The parents specifically complained that $10,365 was due and outstanding for August through November 2007.

On November 19, 2007, the parents received the SRO's decision, dated November 14, 2007, through counsel, see **07-114**. The SRO contradicted his two previous findings and held against the parents. On December 2, 2007, the parents wrote the District reiterating their demand for compliance with the pendency provision and explicitly "*rejected the proposed 2007-08 IEP, notice sent: August 22, 2007i 10 day letter*" (sic). On December 12, 2007, the parents retained counsel to appeal the erroneous and unfair SRO decision. On January 17, 2008, they filed a Complaint in this United States District Court, for the S.D.N.Y.

Throughout, the student's placement was in jeopardy, see **Plaintiffs' affidavit**.

14

.

## ARGUMENT

IDEA administrative complaint proceedings on the parents' 2006-07 claim were pending before an impartial hearing officer starting on August 18, 2006 and continuing through the State's administrative review that was not completed until November 14, 2007 when the SRO issued a decision, see **07-114**.  As stated above, the District ultimately complied with the mandate of pendency while the hearings before Mr. Kehoe were pending.  However, during their appeal to the SRO and during this federal court action that the District totally disregarded this important procedural safeguard, see **Plaintiffs' Affidavit, paragraphs 21- 30 and see invoices from Kildonan attached thereto**.

Again, Plaintiffs herein ask this Court to identify Kildonan School as the pendency placement and to direct full and uninterrupted tuition payments throughout all proceedings, including the proceedings brought before the SRO. Until the 2006-07 claim is finally resolved, the pendency provision should have automatically applied.  Pendency is defined as the last unappealed decision or the last agreed- upon placement.  As of November 13, 2007, the last agreed upon and unappealed decision was the March 7, 2006 SRO decision, **No 06-005**.

There was no new placement recommendation which could have superceded the agreed upon placement at Kildonan, see **Plaintiffs  Affidavit**. Thus, there was no intervening or overriding agreement between the parents and the District.  The parents notified the District that they were again rejecting the District's 2007-08 IEP and, in accordance with the first two unappealed SRO

15

decisions, they notified the District that Chloe would continue in her then-current educational placement at the Kildonan School for 2007-08 and/or until an alternative placement was agreed upon.  Moreover, subsequent to the SRO's unfavorable decision, the parents' repeatedly asserted continuing disagreement with a change in placement from the highly-specialized Kildonan School back to the public high school.

Article 89, Section 4404(3) of the New York State Education Law provides for a four month statute of limitations. The explicit statute demonstrates that this window of time was clearly contemplated by lawmakers in New York.  On January 17, 2008, the parents brought the underlying Complaint to this United States District Court, S.D.N.Y.  This filing rendered the November 14, 2007 decision as appealed; Part 279.12 of the State's regulations state that "*the decision of the State Review Officer shall … be final, unless an aggrieved party seeks judicial review.*"  Note that the strict construction of this statutory language is "unless" a party seeks judicial review and NOT "until" a party seeks judicial review.  Thus, the SRO was never a "final, unappealed" decision as defined by State law and the District was not relieved of its obligation to maintain the student in her then current educational placement.

To suggest Chloe should have been removed back to the District preferred placement for the period between November 19, 2007 (receipt of the unfavorable SRO decision) and January 17, 2008 (filing of appeal to federal court) defies reason, fairness and the purposes of the pendency provision.

16

Again, the law mandates that an SRO decision is not a final decision for purposes of pendency where a party properly moves to bring on a timely, permissible appeal.   The pendency provision states that the SRO decision is final unless, not until, such appeal is taken.

At no time between November 19, 2007, when they received the SRO decision, and January 17, 2008, when an appeal was filed, did the parents take steps that might be contrived as acquiescence to the SRO's decision regarding placement.  In addition, the District never notified the parents that there was a temporary or interim change in placement while the parents prepared an appeal. The District never contacted the parents to arrange for a return of the student mid-year to the public school. They did not notify Kildonan that there was a legal shift in who was responsible for tuition.

Indeed, on December 2, 2007, the parents wrote the District reiterating their demand for access to the pendency provision and explicitly "*rejected the proposed 2007-08 IEP, notice sent: August 22, 2007i 10 day letter*" (sic).

### THE LAW ON PENDENCY

The parents request an order directing the School District to immediately undertake necessary steps to ensure the student's 2007-08 tuition payments are up-to-date.  The student is entitled to "stay-put" services as a matter of law.

The pendency provision "*is intended to maintain some stability and continuity in a child's school placement during the pendency of review proceedings.*" <u>Board of Education v. Ambach</u>, 612 F.Supp. 230, 233 (E.D.N.Y. 1985). "*Section 1415(j) establishes a student's right to a stable learning environment during what may be a lengthy administrative and judicial review*" citing <u>Tenn. Dept. of Mental Health & Mental Retardation v. Paul B.</u> 88 F. 3d 1466, at 1472 (6th Cir. 1996), <u>Carl B. v. Mundelein H.S. Dist. 120 Bd of Ed.</u>, 93 CV 5304, (N.D. Ill. 1993).

The litigation surrounding stay-put generally involves two issues.  First, one must determine the "*then-current educational placement*" of the student whose placement is being challenged. The "*then current placement*" has generally been defined by decisional case law as the last operating IEP to which both parties agreed.   In the instant case, the last operating IEP was that preferred by the parents, i.e. Kildonan, as determined appropriate by the unappealed SRO decision.   No subsequent, superseding or interim IEP has operated.

The second issue that is frequently addressed is the assignment of financial responsibility for the child's education.  Because stay-put acts to freeze the status quo, courts have demanded that the party who bore the financial burden of the then current placement must continue to bear that burden during the proceedings.

The right to Stay-Put extends throughout the pendency of "*all*" the proceedings, administrative and judicial, regarding a student's educational

disputes until they are completed*,* S.W. and Joanne W. v. Holbrook Public Schools, 221 F. Supp. 2d 222 (2002); 20 U.S.C. 1415(j); and Verhoeven v. Brunswick School Committee, 207 F.3d 1, at 3 (1st Cir. 1999).

Consistent with the statute, the Federal Regulations, at 34 CFR, Part 300, section 512 regarding the status of a child during the pendency of a proceeding state that:

(a)       Except as provided in § 300.526, during the pendency of any administrative or judicial proceeding regarding a complaint under 300.507, unless the State or local agency and the parents or the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement.

(b)       If the complaint involves an application for initial admission to public school, the child with the consent of the parents, must be placed in the public school until the completion of all the proceedings.

(c)       If the decision of a hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State or local agency and the parents for purposes of paragraph a of this section.

Pendency, or stay-put, presumes a placement proposed by the school district and accepted by the parents. In this case, the parents' have yet to accept a proposal to remove the student from Kildonan, a special school for dyslexics, and return to the public high school with only supplemental special education services. In the alternative, stay-put presumes a placement identified by an unappealed, decision.

The short gaps between decisions and appeals may not be used to impose a change in placement upon the child. To require such would be

19

contrary to the explicit purpose of the Act and cause profound disruption to the disabled child.  Such a ruling would call for bouncing the child back and forth between as many different settings as there are decisions in these special education cases.  There is no stability to such application.  As the District did not view the Kehoe hearing decision to be final during the 39 days it expended to prepared its appeal to the SRO, the SRO decision cannot be deemed a final decision until the statutory time for appeal has run its course.  Thus, the brief period between November 19, 2007 when the unfavorable SRO decision was received and January 17, 2008 when they filed their federal complaint hereunder, did not and could not relieve the District from making pendency payments or otherwise impose a change in placement upon the student and her family.

In <u>Woods v. New Jersey School District of Education</u>,  12 IDELR 439 (3rd Cir. 1993) at 440, the court held that "*the purpose of the 'stay put' is to preserve the status quo of the child's functioning placement and program until the underlying IDEA litigation is resolved unless there is an effective waiver*."  Here, there is underlying IDEA litigation which is as yet unresolved.  In <u>Woods</u>, the court noted that the provision is "*a statutory injunction*" and meant to preserve the programming provided to the student while the adults argue the proposed change.  This provision demonstrates "*Congress's policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved*."  <u>Woods</u> at 440.  Affirmed in <u>Drinker v. Colonial School District</u>, 78 F.3d 859 (3rd Cir. 1996).

20

In Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83 (3d Cir. 1996), the Third Circuit referred to the specific language in Section 1415(j)[4] and characterized the "current educational placement" for purposes of pendency, as the placement "*actually functioning when the 'stay put' is invoked."* Also see other early cases: Grkman v. Scanlon, 528 F. Supp. 1032 (W.D. Pa. 1981).

Thus, both the statute and relevant caselaw unequivocally requires that the child must "stay-put" during that period of time where the State or local education agency and the parents litigate the issue of what is appropriate for the child. In this case, the parents are litigating the issue of what is appropriate for 2006-07. The parents also rejected the proposal for 2007-08. No hearing on 2007-08 has, as yet, been undertaken as the proceedings on 2006-07 are still pending. As a result, this hearing officer must look to the earlier school years to find an agreed-upon, or pendency, placement. The SRO decision declaring Kildonan School appropriate in 2005-06 defines the student's current educational, "stay-put" or "statuo quo" placement as of this motion which is pending to resolve the dispute on 2006-07.

The purpose of the pendency provision is to provide stability and consistency in the education of a child with a disability, Honig v. Doe, 484 U.S. 305 (1987). During the pendency of the mandated complaint review procedures, and explicitly inclusive of both the administrative and judicial procedures, the child's placement is not to be changed unilaterally by the School District. See for example:  In the Matter of Pawling Central School District, v. New York State

---

[4] Then codified at Section 1415(e)(3).

Education School District et al., Supreme Court of New York, Appellate Division, Third Dept. 3 A.D.3d 821; 771 N.Y.S.2d 572; 2004 N.Y. App. Div. (2004). The Defendant School District has violated these important procedures and denied Plaintiffs' access to the pendency provision.

## CONCLUSION

In closing, Plaintiffs ask the Court to study the invoices from the Kildonan School demonstrating that, as of the filing of this Motion for Preliminary Injunction, the District has paid only 1.5 months, or $5,182.50, in tuition for 2007-08. Tuition is outstanding for the months of October 2007, November 2007, December 2007, January 2008, February 2008, March 2008, April 2008 and May 2008. The total outstanding debt is $30,267.50. This situation has seriously jeopardized Chloe's education. She is currently ineligible to receive her school reports, grades or testing results; her family is ineligible to submit notice of continued attendance next fall.

The Defendant here has acted in a manner that reflects a policy of respecting the pendency provision only during the course of the impartial hearing. It did fund the student's placement at Kildonan through the course of the Kehoe hearing and the 2006-07 school year. However, upon losing that claim, and bringing the issue to the second tier of administrative review, and upon the parents' appealing that second tier decision to this Court, the Defendant unlawfully ceasing funding the student's pendency placement.

The Defendant's failure to make timely payments throughout the period of its appeal to the SRO from the Kehoe decision and then pending the issuance of the SRO's decision of the 2006-07 claim, was and continues to be illegal. Moreover, the Defendant's failure to make timely payments subsequent to the SRO's decision and pending the parents appeal of that SRO decision on the 2006-07 claim to this Court, was also illegal.

Until such time as a final, unappealed decision is issued with regard to 2006-07, the final, unappealed decision with regard to 2005-06 controls the student's 'stay-put' or 'status quo' placement through and until there is a final, unappealed decision with regard to 2006-07.


**WHEREFORE**, the parents respectfully request this Court grant a preliminary and interlocutory judgment on the issue of 'status quo' enjoining the School District from imposing its illegal policy and practice of terminating and/or delaying funding for the disabled child's attendance in her current educational placement. The Court is asked to enter an Order requiring immediate and ongoing compliance the pendency provision and direct full payment for the student's uninterrupted attendance at Kildonan beginning August 23, 2006 and continuing until the underlying claim is fully resolved.

DATED:   June 2, 2008                          Respectfully submitted,

                                               RosaLee Charpentier, Esq.
                                               Attorney for Parents
                                               Family Advocates, Inc.
                                               209 Clinton Avenue
                                               Kingston, New York 12477

To: Mark Rushfield, Esq.