UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LAURA DAVIS and EDWARD DABROWSKI
      as parents of a disabled student, C.D.
           Plaintiffs,

  -against-

CARMEL CENTRAL SCHOOL DISTRICT,
           Defendant.
------------------------------------------------------------X
STATE OF NEW YORK)
COUNTY OF PUTNUM)    ss.:

**PLAINTIFFS' AFFIDAVIT IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**
INDEX NO. 7:08 CV 0445

**LAURA DAVIS**, being duly sworn, deposes and says:

1. I am the parent of Chloe D. who is now 16 years old. My ex-husband is Ed Dabrowski and we jointly parent our daughter; here, we jointly make these assertions. We all reside in the Defendant's Carmel Central School District (the District) where my daughter is classified as learning disabled and eligible for special education and related services under the Individuals with Disabilities Education Act (IDEA).

2. We[1] rejected the District's 2004-05 IEP because it called for placement of my severely learning disabled child into special education classes for English, math and reading, and into general education classes for social studies and science with only resource room support. We sought an order from administrative review officer(s) requiring placement of our daughter into a special school that specialized in Orton-Gillingham teaching and that provided one-to-one instruction for language arts. Pending the outcome of that proceeding, and

---

[1] Mr. Dabrowski and I act jointly as Chloe's parents. Here, I use "we" or "I" to mean both of us as parents.

as a debt to our family, I placed her at such a school, the Kildonan School, located 45 minutes from out house; I asked for tuition reimbursement.

3. Kildonan School is a nationally-recognized private school dedicated to the plight of severely language-based, learning disabled children (i.e. reading problems and/or dyslexia); it was founded by Diana King, a colleague of both Dr. Samuel Orton and Anna Gillingham. It is located in Amenia, New York, and offers highly specialized instruction to students from grades 2 to 12; its entire program is designed to address the needs of students with severe reading and language arts disabilities. All teachers are trained and supervised in the use and application of Orton-Gillingham teaching protocols and techniques. Orton-Gillingham is scientifically proven to effectively remediate language-based learning disabilities, i.e. dyslexia.

4. The hearing, which I had requested on August 19, 2004, did not begin until January 18, 2005. I received a decision from the hearing officer dated May 19, 2005, where I won. The District did not appeal this for 41 days. In the interim, the District refused to acknowledge the existence of the hearing officer's decision, did not reconvene its CSE and did not offer to comply with the directives regarding tuition payments. In a decision dated August 10, 2005, State Review Officer ("SRO"), dismissed the District's appeal and agreed with me that Chloe's placement at Kildonan was appropriate, see **SRO decision No. 05-063**, **FORWARDED TO THE COURT WITH THE UNDERLYING COMPLAINT**. As had the hearing officer's decision, the SRO's decision granted full tuition reimbursement for my daughter's placement at Kildonan.

5. Upon receipt of the August 10, 2005 SRO, I was advised by my attorney that the District was, from that day forward, required to fund my daughter's placement at Kildonan even if they appealed the SRO decision to the courts. This was the first time I heard of "pendency" or "status quo". I did not fully understand it. We interpreted the newly amended Individuals with Disabilities Education Act (IDEA), to mean that an SRO decision that favored my preferred placement forced a change on the official placement and was thereafter, the District responsibility to fund, see 34 CFR 300.512(c).

6. I waited the required four months, but the District did not appeal the **Number 05-063 SRO decision**, i.e. 2004-05. In the interim, another inappropriate IEP was proposed for 2005-06; this IEP called for the same plan of services that I rejected in 2004-05. Moreover, the District refused to pay the outstanding tuition that I owed to Kildonan for 2004-05, instead they only "reimbursed" me for funds when I could prove that I had already paid; they would not help me resolve tuition that I still owed. They began releasing funds only upon proof of payment and I could only pay Kildonan $2,500 at a time. Each time I submitted proof of paying an additional $2500, the District delayed several weeks (sometimes months) before reimbursing me. Today, tuition for 2004-05 is still outstanding in the amount of $7,500. The District delay in processing reimbursement has strained my relationship with Kildonan.

7. On August 18, 2005, the District's Committee on Special Education ("CSE") sent me their proposed IEP for 2005-06; I could see they had refused to revise or modify Chloe's IEP and I wrote them to object to their proposed return

of Chloe to placement at the public high school with special classes for reading and math (but not English) and general education classes with consultant teacher services (a change from resource room support) for social studies, science and English. I notified them this was unacceptable and would continue to object.

8. On August 18, 2005, we wrote to formally notify the District we were continuing our objections to the CSE's unchanged IEP and placement recommendation. As we had both received the final SRO decision on 2004-05 eight days earlier, on August 10, 2005, I was very upset. A new hearing officer was appointed and I demanded she assure me that pendency funding was in place before we proceeded to a second full hearing. Hearings are very expensive and difficult for us; neither Mr. Dabrowski nor myself receive pay when we miss work for the proceedings. To obtain pendency funding for 2005-06, I argued that the SRO's August 10, 2005 decision on 2004-05 constituted a legal change in the definition of FAPE for Chloe.

9. I forwarded invoices for tuition payments for 2005-06 directly to the District. On September 22, 2005, a partial payment of $3,025 was received by the Kildonan School for 2005-06 tuition, see Kildonan Invoice **ATTACHED HERETO**, **Exhibit A**. The District funded Chloe's attendance at Kildonan for 2005-06, albeit belatedly, see final payment for 2005-06 not received until September of the following school year.

10. On March 7, 2006, the SRO issued a decision on my renewed objections once again declaring that the District's IEP was inappropriate and that our preferred placement of Chloe at the Kildonan School continued to be appropriate for 2005-06; full tuition reimbursement was again ordered, see **pages 10-12, SRO decision No. 06-005, attached to the Complaint**.

11. On March 28, 2006, three weeks after receipt of the second SRO decision which supported Chloe's continued placement at Kildonan, the District convened a CSE meeting and once again offered an IEP for 2006-07 stating that it "*agrees on placement at CHS [Carmel H.S.] She will receive Consultant Teacher for all academic classes, Special Class Reading, and Counseling as a Related Service. Goals, program and test modifications were reviewed*". Chloe's father, who joins me on all educational matters, attended the meeting. He advised me that morning that not one person at the meeting had read the SRO decision nor had they been briefed on it. No one was aware of the first SRO decision either. I objected in writing and requested the CSE be reconvened to reconsider the proposed recommendations for 2006-07, Exhibit F, see administrative record **filed by the State Education Department with this Court**.

12. On August 10, 2006, the District reconvened a completely different team of people who were equally unaware of the two SRO decisions ordering Kildonan. That CSE merely approved the prior proposal as objected to earlier in the Spring, see above. For a third time, the District ignored our position regarding Chloe's need for intensive special school placement and again offered

the same IEP and placement at the public high school with part-time special class (this time only for reading) and general education classes with consultant teacher services for everything else.

13. On August 23, 2006, I formally rejected the proposed 2006-07 IEP and placement, requested a third impartial hearing on our claim that Chloe requires a more intensive placement than available at the public high school and gave notice of Chloe's continuation for 2006-07 at Kildonan, p. 649, Joint Exhibit 2A and submitted the State's form for initiating due process, Exhibit 2B. At no time since that date have I entered into any form of an agreement that might have altered Chloe's placement status at Kildonan, see administrative record.

14. Subsequent to our renewed request for hearing, I received written notice of the District's 2006-07 IEP; on August 27, 2006 we immediately wrote the CSE to make our continued rejection of the proposal for a change in programming clear and to express further objection to the IEP as written, see Exhibit S and T. I also called the District to address this concern, testimony, p. 651-2.

15. On September 15, 2006, I had not received notice of funding provisions under the pendency rule. I wrote the District again reiterating my objection and requesting an impartial hearing stating that the District's plan for placing my daughter into general education classes, see District Exhibit #2C.

16. The District did not make any payments towards the 2006-07 tuition at any time during the months of September 2006, October 2006, November 2006

or December 2006, see attached **Exhibit B**.

17. On January 31, 2007, with the oversight of the new hearing officer, Martin Kehoe, the District, initiated tuition payments to Kildonan as required by the "status quo" rule, see **Exhibit B**. This six month delay in funding for my daughter's education, seriously strained relations between us, as parents, and the Kildonan School. We had routinely received warnings that Chloe could not continue in school until payments were made.

18. The impartial hearing started on April 10, 2007 and ended on June 26, 2007, **p. 4, SRO Decision No. 07-114**.

19. The delay in the start of that hearing was NOT our fault and much of that time was consumed by the attorneys and hearing officer discussing possible appeal of the 2005-06 claim, settlement, scheduling and when pendency payments would begin.

20. On August 22, 2007, I gave the District my annual notice of dissatisfaction and disagreement with the 2007-08 proposed placement returning Chloe to the public high school, **Exhibit C**. Thus, at no time did I agree, or acquiesce, to a change in Chloe's placement from the Kildonan School.

21. On August 24, 2007, impartial hearing officer M. Kehoe issued a decision concluding once again that our severely dyslexic child had been denied access to a free appropriate public education and declaring that the Kildonan School was the appropriate placement for 2006-07, see administrative record filed hereunder.

22. On August 27, 2007 and again on September 5, 2007, I wrote to the

District clearly re-stating my specific objections to the 2007-08 plan for Chloe in the public school. I asked for information about the District's intent to sign a contract with Kildonan for the upcoming year. I asked for information about alternative special school options, similar to Kildonan but approved by New York for CSE placement, i.e. Landmark School. As I had in each of the prior school years, I told them I continued to want Orton-Gillingham teaching and one-to-one intensive instruction, **Exhibits D and E**. At no time did I agree to a change in the Kildonan placement.

23. The 2006-07 school year started the first week in September, 2007 but the District failed to make any payment of tuition at Kildonan; non-payment of tuition continued throughout September, 2007, see September 28 and October 9 invoices from Kildonan, **Exhibits F and G**.

24. On September 30, 2007, the District made their appeal of Mr. Kehoe's decision to the SRO. We responded on October 10, 2007. In October and November, 2007, I contacted Kildonan to determine whether the District had been notified of tuition costs; I was provided proof that the District was on notice of the outstanding tuition and had been billed by Kildonan directly, **Exhibit H**.

25. Throughout the fall of 2007, I repeatedly wrote the District to inquire as to the District's tuition payment plans believing that pendency was required because: (1) the hearing officer held in our favor regarding the Kildonan placement and (2) due to the District's appeal served upon me on September 30, proceedings on 2006-07 were still pending.

26. The District's appeal of our 2006-07 win continued to be pending

before the State's administrative review officer through November 14, 2007. In the interim, there was absolutely no effort to maintain Chloe in her placement. Even though, the District had itself decided to keep the proceedings on 2006-07 ongoing in its appeal to the SRO, they failed to pay for Chloe's pendency placement at any time in October, and/or November 2007.  Again, our relationship with the administration at the Kildonan School was seriously threatened.  I made weekly visits to the Headmaster to plead for additional time.

27. On November 17, 2007, I had not yet received a decision from the SRO.  I requested another impartial hearing on the District's refusal to pay Chloe's tuition through that date.  We owed $10,365 as of that date, **Exhibit I**. As of December 17, 2007, we owed an additional $11,000, **Exhibit J, also see Exhibit Q**.

28. In early December 2007, I met with my attorney and reviewed the SRO's decision which was unfavorable to us and, I believe, denied Chloe the right to a free appropriate public education.  I did not accept this unfair decision which was based on technicalities and I did not agree to change Chloe's placement.  To the contrary, on December 12, 2007, I retained my attorney to take an immediate appeal to the federal court to address the unfair SRO decision.  We simultaneously agreed to ask a hearing officer for immediate help getting payments from the District for Chloe's pendency placement.

29. Through my attorney, on January 17, 2008, we filed the underlying federal Complaint.  Also through my attorney, on January 17, 2008, I sent a written request to the hearing officer asking for enforcement of status quo; in this

request to the hearing officer, my attorney attached a copy of our federal court Complaint dated that same day, see hearing officer's reply[2], at page 7; he cites this federal court's index number 07-114, **Exhibit K**.

30. Thus, on January 17, 2008, the District was given notice of the fact that we had appealed the SRO decision regarding 2006-07. Their attorneys had the Complaint mailed to them that day. Nonetheless, no efforts to maintain Chloe's placement were undertaken. On January 21, 2008, I was notified that Kildonan would not allow Chloe to continue to attend school, **Exhibit L**.

31. On February 15, 2008, the new impartial hearing officer wrote me that I could not have pendency without having a new hearing on the new IEP (2007-08). On February 22, 2008, I cooperated with the hearing officer's insistence to expand the issue beyond status quo. I wrote to re-instate yet another full hearing on the IEP, but when Mr. Nachman said he could not enforce pendency, I determined to bring the issue of pendency to court.

32. On April 7, 2008, Kildonan received two checks totaling $5,182.50 from the Carmel Central School District for Chloe's 2007-08 tuition, **Exhibit M.** No other payments have been made and we need judicial intervention to secure Chloe's right to some stability in her education, see invoices dated yesterday, May 29, 2008 reflecting

33. Our rights continue to be violated and Chloe's placement and education future is in serious jeopardy, see **Exhibit N (tuition bill dated 4/28/2008), Exhibit O (tuition bill dated yesterday, 5/29/2008) and Exhibit R.**

---

[2] Note hearing officer Nachman's typo regarding the date: it was February 15, 2008, NOT March 15.

**WHEREFORE,** I AM REQUESTING EMERGENCY INTERVENTION FROM THIS COURT directing the School District to immediately undertake necessary steps to ensure our daughter's access to all IDEA entitlements, including "status quo", or "pendency" funding and to immediately bring the 2007-08 tuition payments up-to-date. Plaintiffs ask the Court to issue an interlocutory Order requiring immediate, continuous, uninterupted and ongoing compliance with the placement that was operating at the time our Complaint was initiated, see the unappealed decision the SRO, at No. 06-005 (2005-06).

DATED:   May 30, 2008                                  _____//s//_____

                                                                            LAURA DAVIS


Sworn to before me this 30th day
Of May 2008.

_____

   //s//

RosaLee Charpentier, Esq.
Attorney for Parents
Family Advocates, Inc.
209 Clinton Avenue
Kingston, New York 12477


    ECF

    To: Mark Rushfield, Esq.