UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

LAURA DAVIS and EDWARD DABROWSKI

       as parents of a disabled student, C.D.

            Plaintiffs,


      -against-                            **INDEX NO. 7:08 cv 0445**


CARMEL CENTRAL SCHOOL DISTRICT,

Defendant.

-------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS**

**MOTION FOR PRELIMINARY INJUNCTION DEFINING THE**

**STUDENT'S PENDENCY PLACEMENT**


                            RosaLee Charpentier, Esq.

                            Attorney for family

                            Family Advocates, Inc.

                            209 Clinton Avenue

                            Kingston, New York 12401

**INTRODUCTION**

Defendant's arguments presented in opposition to Plaintiffs' motion fail to defeat the requirement imposed by the IDEA's "pendency provision", PLEASE SEE ORIGINAL MOTION PAPERS IN CONJUNCTION WITH THIS REPLY MEMORANDUM.

Parental involvement in special education planning is critical to the purposes of the Individuals with Disabilities Education Act, (IDEA); this involvement bestows upon Plaintiffs here, as parents of a disabled student, Chloe, the right to challenge the decisions of Defendant Carmel Central School District's special education planning team, i.e. its "CSE". The IDEA underscores the importance of this right to challenge CSE decisions by promising to maintain educational stability for the disabled child during all complaint proceedings. This is known as the "pendency provision".

Plaintiffs herein demonstrate how the Defendant has violated the "pendency provision" and request a declaratory, injunctive order to correct. The Defendant has failed to present a basis for waiving the requirements of "pendency" and continues to operate in violation of this critical IDEA benefit. On August 23, 2006, Plaintiffs invoked complaint review procedures established by the U.S. Congress, and thereafter adopted by the State of New York, to challenge the decisions regarding the proposed programming of the Defendant Carmel Central School District. From that day, and continuing uninterrupted through the completion of all administrative and judicial review, "pendency" mandates continued funding of Chloe's placement at the Kildonan School in Amenia, New York.

**THE SCHOOL DISTRICT'S DEFENSES HERE**

The Defendant's objections to Plaintiffs' request for judicial intervention on the "pendency" issue appear to include the following points.  (1) "Pendency" can be provided intermittently and at the school district's discretion; Defendant is not required to adhere to the "pendency provision" during its own administrative appeal to the State's second administrative review tier, the SRO; Defendant is responsible under "pendency" only for the period of this district court's review. (2) If a claim is still pending when a new school year begins, the District's obligation under the Act's pendency provision ends <u>unless</u> the parents bring and maintain a separate and new action on the new school year; thus, according to Defendant here, parents who do not renew litigation on each and every school year effectively waive the protections mandated by the pendency provision.  (3) The Court is without authority to review the question of "pendency" so long as the Defendant is operating on a "current basis" with payments for said placement at the time the Court reviews the issue. (4) Parents who first submit the question of their child's "pendency placement" to a hearing officer enter into a binding agreement with the District to define the child's "pendency placement" as whatever the new hearing officer determines; parents are then barred from bringing the issue to federal court.

### 1.  Intermittent Application of Pendency Provision

The first argument ignores the clear language and intent of the Act's "pendency provision".  See paragraph two of Defendant's Affidavit in Opposition, which reports on the periodic suspension of payment for the student's pendency placement at Kildonan.

Upon receipt of the parents' request for hearing on August 23, 2006, Defendant did in fact provide for the student to continue in her then-current educational placement at the Kildonan School.    However, Defendant unilaterally terminated that placement in September 2007, Id.  For many months, and throughout its appeal of the August 23, 2006 claim to the State Review Officer and a subsequent federal court complaint, Defendant unlawfully relieved itself of providing for the student's placement at Kildonan. In the middle of April 2008, Defendant re-instated funding for the student's placement at Kildonan.

Nothing in the statute or in corresponding caselaw supports Defendant's policy and practice of intermittent application of the "pendency" provision.  It is widely understood that the main purpose of this provision was to prevent the public school from unilaterally changing the child's placement over the parents' objection, School Committee of the Town Of Burlington v. Department of Education of Massachusetts, 105 S. Ct. 1996 (1985).  That is precisely what Defendant's suspension of payment for the student's placement at Kildonan during the first 8 months of the 2007-08 school year was designed to accomplish.  As the Director of Pupil Services avers in paragraph two, the District unilaterally changed Chloe's placement as of September 2007.  Apparently, the District unilaterally changed Chloe's placement back to Kildonan in April 2008, see Exhibit M, Plaintiffs' affidavit.

The Defendant here admits to non-payment of Kildonan's tuition for the months of September 2007 through April 2008, paragraph two, Defendant's affidavit.   This constituted an illegal change in the student's placement.  The Supreme Court prohibited

such practice when it ruled that school officials cannot unilaterally change the placement of children with disabilities, Honig v. Doe, 484 U.S. 305, 108 S. Ct. 592 at 598 (1988). Defendant defy *"Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved.*" Susquenita Sch. Dist. v. Raelee S., 96 F. 3d 78, 83 (3d Cir. 1996) (emphasis supplied, internal quotation marks omitted), cited with approval in Bd. of Educ. v. Schutz, 290 F.3d 476, 484 (2d Cir. 2002).

Defendant's acknowledgement of a practice of discontinuing funding for the student's placement during the pendency of its own appeal to the State and thereafter on parents' appeal to this federal court violates the IDEA, see for example, the Second Circuit's ruling in Zvi D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982) (footnote omitted):

> "*[u]nder the statute, the inquiry focuses on identifying 'the then current educational placement,' and, further, on who should pay for it, for implicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing. To cut off public funds would amount to a unilateral change in placement, prohibited by the Act.*"

Also see Woods v. New Jersey Department of Education, 12 IDELR 439 (3rd Cir. 1993,

Defendant's so-called "position" abdicating responsibility for Chloe's placement at Kildonan from September 2007 through April 2008, is unjustified and substantially diminishes the importance Congress attached to "*consistency in a disabled child's*

*continued education during an ongoing conflict of an IEP*", Doe v. Brookline School Committee 722 F2d 910 (5th Cir. 1983).

### 2. Issuance of a New IEP to Circumvent the Pendency Requirement

Defendant's second argument is also contrary to law.  Their argument is that a parent's failure to request an impartial hearing on subsequently-issued IEPs has the same force and effect of a voluntary agreement to terminate "pendency" and to change the student's placement.  Such a position imposes a new and unduly burdensome, procedural requirement on parents who challenge the special education plan proposed by Defendant's public school.  This argument requires the court to hold that the "pendency provision" applies continuously throughout all administrative and judicial proceedings only if the parents bring new administrative and judicial actions on all IEPs issued by the public school in the interim.

Defendant alleges that its "*issuance of a new IEP for C.D. for the 2007-08 school year*" effectively changed the student's placement and ended Defendant's obligations to maintain the student's pendency placement at Kildonan. Defendant argues that unless a new hearing is initiated, parents automatically agree to terminate "pendency".  There is no basis in law for such policy and practice.

Defendant unlawfully determined that pendency would not apply without a renewed request for hearing on the new IEP.  There is no language in the statute permitting a school district to so easily circumvent the requirements of "pendency".  Its position that failure to maintain new litigation constitutes an effective waiver on existing

6

pendency requirements is unsupported by law and equity.  While the creation of a new

IEP for 2007-08 gave the Defendant a renewed opportunity to work collaboratively with

the parents to develop a new and/or different special education plan for Chloe that was

agreeable to both parties, the mere "*issuance of a new IEP*" cannot be used to impose

an unwanted change in the child's placement via termination of funding.  Clearly,

Chloe's parents objected to, and rejected, the new IEP for 2007-08, see Plaintiff's

affidavit.  The Defendant was on notice that the parents had determined it was in the

child's best interest to continue her at the Kildonan School for 2007-08, Id.  There was

NO AGREEMENT to change the student's placement.

Plaintiffs assert that Defendant's discontinuation of Chloe's pendency placement

at Kildonan on these grounds is made in bad faith.  There is no evidence that this was

its position in the fall of 2007; in fact, Defendant's appeal to the SRO- taken on October

1, 2007 demonstrates it did not take the "position" that the parents had "otherwise

agree[d]" to change Chloe's placement from the Kildonan School.  The mere "issuance"

of a new IEP to circumvent continued payment of this student's placement at Kildonan

is the type of subterfuge and back-door activity that Congress meant to prohibit in its

enactment of the IDEA's pendency provision.

### 3.  Creating New Limits on Judicial Authority

Defendant's third argument appears to be that this Court may not properly

address a pendency claim where the District is "*making payment of tuition to the*

*Kildonan School for C.D. on a current basis and acknowledges its obligation to do so*

*until such time as this Court may dismiss the instant action challenging the SRO's*

*decision in SRO Decision No. 07-114*", see Defendant's Memorandum of Law, pp. 4-5.

This is yet another argument evade review and/or to circumvent compliance with the

"pendency provision".   Such a policy or rule would certainly encourage all school

districts to suspend a child's pendency placement until such time as the parents may

bring the issue to a Court's attention and then need only re-instate such placement long

enough to avoid judicial review.

In <u>Florence County Sch. Dist. Four v. Carter</u>, 510 U.S. 7, 12 (1993) October 7,

2004, the Supreme Court observed that the IDEA grants "*equitable authority*"[1] to the

courts in resolving IDEA cases. In <u>Burlington</u>, the Supreme Court recognized that

review of an IEP is a "*ponderous*" process and that a "*final judicial decision on the*

*merits*" would "*in most instances come a year or more after the school term covered by*

*that IEP has passed.*" 471 U.S. at 370. The Court cited the IDEA's provision that a

reviewing court has the broad discretion to "*grant such relief as the court determines is*

*appropriate.*" *Id.* at 369 (internal quotation marks omitted); see also 20 U.S.C. §

1415(i)(2)(B)(iii).   This broad discretion is not limited for purposes of enforcing the

"pendency" rule.

Moreover, the Defendant has not shown that it is in fact operating on a "current

basis" with regard to tuition payments for this student.  As the evidence here shows,

2007-08 tuition payments have not been made "*on a current basis*", see plaintiff's

---

[1] All quotes are italicized herein to enhance readability ONLY.

affidavit.    As of the filing of the instant Motion, Defendant owed tuition payments to the

Kildonan School for the student's current and continuing educational placement in the

amount of $29,367.50; again see **Exhibit Q** filed with Plaintiffs' affidavit.  There is no

evidence suggesting the District "*acknowledges its obligation*" to conform to the

pendency provision.  In fact, in a direct communication to the parent on May 29, 2008

the District clearly asserts that "*for Kildonan tuition from August 1, 2007 thru January*

*17, 2008, it is the District's position that we do not have responsibility*" see **Exhibit R**,

filed with Plaintiffs' affidavit.


In its opposition pleadings, Defendant argues that subsequent tuition payments

have been made to Kildonan.  These payments are applied to the outstanding tuition

debt owed for September 2007 through January 2008, or approximately one-half the

outstanding tuition now due Kildonan.  This delinquency seriously jeopardizes Chloe's

future educational options.


Even in its argument here, the District asserts no "*obligation*" under pendency but

rather some modified obligation to make some payments of partial tuition "*until such*

*time as this Court may dismiss the instant action*".  Plaintiffs have brought this issue to

federal court to ensure their disabled daughter's access to the "pendency provision"

protections beginning from the origination of their claim, on August 23, 2006, and

continuing uninterrupted throughout and until the final resolution of said claim via an

unappealed IDEA decision.  "*Section 1415(j) establishes a student's right to a stable*

*learning environment during what may be a lengthy administrative and judicial review*"

9

citing <u>Tenn. Dept. of Mental Health & Mental Retardation v. Paul B</u>. 88 F. 3d 1466, at 1472 (6th Cir. 1996), <u>Carl B. v. Mundelein H.S. Dist. 120 Bd of Ed.</u>, 93 CV 5304, (N.D. III. 1993).   There can be no room here for Defendant to argue it was free to disregard the pendency placement during both the second-tier administrative review and the first several months of this Court's judicial review.

### 4.  Misuse of Verhoeven v. Brunswick Sch. Comm., 207 F. 3d 1, 8-9 (1st Cir. 1999) to Impose an Involuntary "Agreement" on Chloe's Parents

The final identifiable argument asserted by Defendant here is that Plaintiffs are not eligible to present this claim to the Court because the question was previously submitted to a hearing officer.  Defendant suggests that because Plaintiffs first sought pendency relief from a hearing officer they somehow entered into an agreement with the school district to be bound by that hearing officer's decision.  This requires the Court to impose the "exhaustion requirement" upon parents here and in doing so requires the Court to defy the conclusions set forth by the Second Circuit in <u>Murphy v. Arlington C.S.D.</u>, 297 F. 3d 195 (2002).

In support of its theory that where parents first explore relief from the administrative hearing officer, parents forever waive the right to bring the issue to this Court's attention, Defendant cites the First Circuit's decision of <u>Verhoeven v. Brunswick Sch. Comm.</u>, 207 F. 3d 1, 8-9.   Reliance on <u>Verhoeven</u> is a mistake.  There, the First Circuit found an effective waiver of the pendency provision through an actual agreement

the Verhoeven family made with their school district at a pre-hearing conference.  Here there was no such agreement.  In <u>Verhoeven</u>, the parties held a conference wherein each side agreed that they would be bound by whatever placement the hearing officer identified as the child's pendency placement.  The First Circuit deferred to the district court on its factual finding that an alternative interim placement was created by the parties pre-hearing conference agreement.  In that case, the First Circuit held that an agreement to permit a third party to arbitrate the student's pendency placement satisfies the Act's "otherwise agree" exception, at 20 U.S.C. section 1415(j).

In the instant case, there was NO SUCH SIMILAR agreement- either in pre-hearing conference or anywhere elsewhere; neither the Defendant nor Chloe's parents ever agreed to be bound by the findings of the impartial hearing officer on the issue of pendency.

The <u>Verhoeven</u> case is distinguishable in another significant way:  the parents there had no right to pendency placement at their preferred school, i.e. "SMLC".  That right had been traded away via the prior year's settlement agreement where the Verhoevens signed a settlement agreement with their school district limiting the child's placement at "SMLC" to one single school year, i.e. a "temporary placement".  The Defendant here has no evidence suggesting Chloe's placement at Kildonan would ever be restricted to a single school year.  Indeed, Chloe's entitlement to attend Kildonan was never made pursuant to an agreement with the Carmel School District.   Rather, her placement had been explicitly secured at Kildonan by two final, unappealed administrative decisions.  Such administrative decisions favoring the Kildonan School placement might be

characterized as agreements between the State of New York and Plaintiffs, but not between the District and the parents.

In all events, the events related to hearings regarding the 2007-08 school year, including the decisions, or indecisions of IHO Nachman (appointed to hearing 2007-08 claims) are not before this Court. Only the events reflected in the administrative record corresponding to the August 23, 2006 claim are before this Court. In identifying Chloe's pendency placement, the Court must look to the student's placement at the time of the August 2006 claim. It is that placement which dictates the student's pendency today.

## **CONCLUSION**

Defendant's opposition offers no basis for denying Plaintiffs' request for an order directing full and continuous maintenance of Chloe's placement at the Kildonan School. The August 23, 2006 claim is unresolved. No alternative interim placement has been agreed to and no effective waiver exists. The IDEA through its explicit pendency provision requires continuous, uninterrupted, funding throughout 2007-08 and until the matter achieves a final unappealed status.

**WHEREFORE**, the parents respectfully request this Court grant a preliminary and interlocutory judgment on the issue of 'status quo' enjoining the School District from imposing its illegal policy and practice of terminating and/or delaying funding for the disabled child's attendance in her current educational placement. The Court is asked to enter an Order requiring immediate and

ongoing compliance with the pendency provision and to direct full payment for

the student's uninterrupted attendance at Kildonan beginning August 23, 2006,

continuing until the claim is fully resolved.


DATED:    June 26, 2008                              Respectfully submitted,

                                                     // s //

                                                     RosaLee Charpentier, Esq.

                                                     Attorney for Parents
                                                     RLC-2515
                                                     Family Advocates, Inc.
                                                     209 Clinton Avenue
                                                     Kingston, New York 12477

        To: Mark Rushfield, Esq.

14