UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LAURA DAVIS and EDWARD DABROWSKI
                as parents of a disabled student, C.D.
                   Plaintiffs,

        -against-

CARMEL CENTRAL SCHOOL DISTRICT,
                   Defendant.
----------------------------------------------------------X
STATE OF NEW YORK)
COUNTY OF PUTNUM)    ss.:

**PLAINTIFFS' AFFIDAVIT IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**
INDEX NO. 7:08 CV 0445

      **LAURA DAVIS**, being duly sworn, deposes and says:

      1.  I am the parent of Chloe D. who is now 16 years old.  My ex-husband is Ed Dabrowski and we jointly parent our daughter; here, we jointly make these assertions.  We all reside in the Defendant's Carmel Central School District (the District) where my daughter is classified as learning disabled and eligible for special education and related services under the Individuals with Disabilities Education Act (IDEA).

      2.  We[1] rejected the District's 2004-05 IEP because it called for placement of my severely learning disabled child into special education classes for English, math and reading, and into general education classes for social studies and science with only resource room support.  We sought an order from administrative review officer(s) requiring placement of our daughter into a special school that specialized in Orton-Gillingham teaching and that provided one-to-one instruction for language arts.  Pending the outcome of that proceeding, and

---

[1] Mr. Dabrowski and I act jointly as Chloe's parents.  Here, I use "we" or "I" to mean both of us as parents.

as a debt to our family, I placed her at such a school, the Kildonan School, located 45 minutes from out house; I asked for tuition reimbursement.

3.  Kildonan School is a nationally-recognized private school dedicated to the plight of severely language-based, learning disabled children (i.e. reading problems and/or dyslexia); it was founded by Diana King, a colleague of both Dr. Samuel Orton and Anna Gillingham.  It is located in Amenia, New York, and offers highly specialized instruction to students from grades 2 to 12; its entire program is designed to address the needs of students with severe reading and language arts disabilities.  All teachers are trained and supervised in the use and application of Orton-Gillingham teaching protocols and techniques.  Orton-Gillingham is scientifically proven to effectively remediate language-based learning disabilities, i.e. dyslexia.

4.  The hearing, which I had requested on August 19, 2004, did not begin until January 18, 2005.  I received a decision from the hearing officer dated May 19, 2005, where I won.  The District did not appeal this for 41 days.  In the interim, the District refused to acknowledge the existence of the hearing officer's decision, did not reconvene its CSE and did not offer to comply with the directives regarding tuition payments.  In a decision dated August 10, 2005, State Review Officer ("SRO"), dismissed the District's appeal and agreed with me that Chloe's placement at Kildonan was appropriate, see **SRO decision No. 05-063**, **FORWARDED TO THE COURT WITH THE UNDERLYING COMPLAINT**.  As had the hearing officer's decision, the SRO's decision granted full tuition reimbursement for my daughter's placement at Kildonan.

5.   Upon receipt of the August 10, 2005 SRO, I was advised by my attorney that the District was, from that day forward, required to fund my daughter's placement at Kildonan even if they appealed the SRO decision to the courts.  This was the first time I heard of "pendency" or "status quo".  I did not fully understand it.   We interpreted the newly amended Individuals with Disabilities Education Act (IDEA), to mean that an SRO decision that favored my preferred placement forced a change on the official placement and was thereafter, the District responsibility to fund, see 34 CFR 300.512(c).

6.   I waited the required four months, but the District did not appeal the **Number 05-063 SRO decision**, i.e. 2004-05.   In the interim, another inappropriate IEP was proposed for 2005-06; this IEP called for the same plan of services that I rejected in 2004-05.   Moreover, the District refused to pay the outstanding tuition that I owed to Kildonan for 2004-05, instead they only "reimbursed" me for funds when I could prove that I had already paid; they would not help me resolve tuition that I still owed.   They began releasing funds only upon proof of payment and I could only pay Kildonan $2,500 at a time.   Each time I submitted proof of paying an additional $2500, the District delayed several weeks (sometimes months) before reimbursing me.   Today, tuition for 2004-05 is still outstanding in the amount of $7,500.   The District delay in processing reimbursement has strained my relationship with Kildonan.

7.   On August 18, 2005, the District's Committee on Special Education ("CSE") sent me their proposed IEP for 2005-06; I could see they had refused to revise or modify Chloe's IEP and I wrote them to object to their proposed return

of Chloe to placement at the public high school with special classes for reading and math (but not English) and general education classes with consultant teacher services (a change from resource room support) for social studies, science and English.  I notified them this was unacceptable and would continue to object.

8.    On August 18, 2005, we wrote to formally notify the District we were continuing our objections to the CSE's unchanged IEP and placement recommendation.  As we had both received the final SRO decision on 2004-05 eight days earlier, on August 10, 2005, I was very upset.   A new hearing officer was appointed and I demanded she assure me that pendency funding was in place before we proceeded to a second full hearing.   Hearings are very expensive and difficult for us; neither Mr. Dabrowski nor myself receive pay when we miss work for the proceedings.  To obtain pendency funding for 2005-06, I argued that the SRO's August 10, 2005 decision on 2004-05 constituted a legal change in the definition of FAPE for Chloe.

9.    I forwarded invoices for tuition payments for 2005-06 directly to the District.  On September 22, 2005, a partial payment of $3,025 was received by the Kildonan School for 2005-06 tuition, see Kildonan Invoice **ATTACHED HERETO**, **Exhibit A**.  The District funded Chloe's attendance at Kildonan for 2005-06, albeit belatedly, see final payment for 2005-06 not received until September of the following school year.

10.    On March 7, 2006, the SRO issued a decision on my renewed objections once again declaring that the District's IEP was inappropriate and that our preferred placement of Chloe at the Kildonan School continued to be appropriate for 2005-06; full tuition reimbursement was again ordered, see **pages 10-12, SRO decision No. 06-005, attached to the Complaint**.

11.    On March 28, 2006, three weeks after receipt of the second SRO decision which supported Chloe's continued placement at Kildonan, the District convened a CSE meeting and once again offered an IEP for 2006-07 stating that it "*agrees on placement at CHS [Carmel H.S.]   She will receive Consultant Teacher for all academic classes, Special Class Reading, and Counseling as a Related Service. Goals, program and test modifications were reviewed*".   Chloe's father, who joins me on all educational matters, attended the meeting.   He advised me that morning that not one person at the meeting had read the SRO decision nor had they been briefed on it.   No one was aware of the first SRO decision either.   I objected in writing and requested the CSE be reconvened to reconsider the proposed recommendations for 2006-07, <u>Exhibit F</u>, see administrative record **filed by the State Education Department with this Court**.

12.    On August 10, 2006, the District reconvened a completely different team of people who were equally unaware of the two SRO decisions ordering Kildonan.   That CSE merely approved the prior proposal as objected to earlier in the Spring, see above.   For a third time, the District ignored our position regarding Chloe's need for intensive special school placement and again offered

the same IEP and placement at the public high school with part-time special class (this time only for reading) and general education classes with consultant teacher services for everything else.

13.    On August 23, 2006, I formally rejected the proposed 2006-07 IEP and placement, requested a third impartial hearing on our claim that Chloe requires a more intensive placement than available at the public high school and gave notice of Chloe's continuation for 2006-07 at Kildonan, p. 649, Joint Exhibit 2A and submitted the State's form for initiating due process, Exhibit 2B.  At no time since that date have I entered into any form of an agreement that might have altered Chloe's placement status at Kildonan, see administrative record.

14.    Subsequent to our renewed request for hearing, I received written notice of the District's 2006-07 IEP; on August 27, 2006 we immediately wrote the CSE to make our continued rejection of the proposal for a change in programming clear and to express further objection to the IEP as written, see Exhibit S and T.  I also called the District to address this concern, testimony, p. 651-2.

15.    On September 15, 2006, I had not received notice of funding provisions under the pendency rule.  I wrote the District again reiterating my objection and requesting an impartial hearing stating that the District's plan for placing my daughter into general education classes, see District Exhibit #2C.

16.  The District did not make any payments towards the 2006-07 tuition at any time during the months of September 2006, October 2006, November 2006

or December 2006, see attached **Exhibit  B**.

17.   On January 31, 2007, with the oversight of the new hearing officer, Martin Kehoe, the District, initiated tuition payments to Kildonan as required by the "status quo" rule, see **Exhibit B**.   This six month delay in funding for my daughter's education, seriously strained relations between us, as parents, and the Kildonan School.   We had routinely received warnings that Chloe could not continue in school until payments were made.

18.   The impartial hearing started on April 10, 2007 and ended on June 26, 2007, **p. 4, SRO Decision No. 07-114**.

19.   The delay in the start of that hearing was NOT our fault and much of that time was consumed by the attorneys and hearing officer discussing possible appeal of the 2005-06 claim, settlement, scheduling and when pendency payments would begin.

20.    On August 22, 2007, I gave the District my annual notice of dissatisfaction and disagreement with the 2007-08 proposed placement returning Chloe to the public high school, **Exhibit C**.   Thus, at no time did I agree, or acquiesce, to a change in Chloe's placement from the Kildonan School.

21.    On August 24, 2007, impartial hearing officer M. Kehoe issued a decision concluding once again that our severely dyslexic child had been denied access to a free appropriate public education and declaring that the Kildonan School was the appropriate placement for 2006-07, see administrative record filed hereunder.

22.   On August 27, 2007 and again on September 5, 2007, I wrote to the

District clearly re-stating my specific objections to the 2007-08 plan for Chloe in the public school.  I asked for information about the District's intent to sign a contract with Kildonan for the upcoming year.  I asked for information about alternative special school options, similar to Kildonan but approved by New York for CSE placement, i.e. Landmark School.  As I had in each of the prior school years, I told them I continued to want Orton-Gillingham teaching and one-to-one intensive instruction, **Exhibits D and E**.  At no time did I agree to a change in the Kildonan placement.

   23.   The 2006-07 school year started the first week in September, 2007 but the District failed to make any payment of tuition at Kildonan; non-payment of tuition continued throughout September, 2007, see September 28 and October 9 invoices from Kildonan, **Exhibits F and G**.

   24.   On September 30, 2007, the District made their appeal of Mr. Kehoe's decision to the SRO.  We responded on October 10, 2007.  In October and November, 2007, I contacted Kildonan to determine whether the District had been notified of tuition costs; I was provided proof that the District was on notice of the outstanding tuition and had been billed by Kildonan directly, **Exhibit H**.

   25.   Throughout the fall of 2007, I repeatedly wrote the District to inquire as to the District's tuition payment plans believing that pendency was required because: (1) the hearing officer held in our favor regarding the Kildonan placement and (2) due to the District's appeal served upon me on September 30, proceedings on 2006-07 were still pending.

   26.   The District's appeal of our 2006-07 win continued to be pending

before the State's administrative review officer through November 14, 2007. In the interim, there was absolutely no effort to maintain Chloe in her placement. Even though, the District had itself decided to keep the proceedings on 2006-07 ongoing in its appeal to the SRO, they failed to pay for Chloe's pendency placement at any time in October, and/or November 2007.   Again, our relationship with the administration at the Kildonan School was seriously threatened.  I made weekly visits to the Headmaster to plead for additional time.

27.   On November 17, 2007, I had not yet received a decision from the SRO.   I requested another impartial hearing on the District's refusal to pay Chloe's tuition through that date.  We owed $10,365 as of that date, **Exhibit I**. As of December 17, 2007, we owed an additional $11,000, **Exhibit J, also see Exhibit Q**.

28.   In early December 2007, I met with my attorney and reviewed the SRO's decision which was unfavorable to us and, I believe, denied Chloe the right to a free appropriate public education.  I did not accept this unfair decision which was based on technicalities and I did not agree to change Chloe's placement.  To the contrary, on December 12, 2007, I retained my attorney to take an immediate appeal to the federal court to address the unfair SRO decision.  We simultaneously agreed to ask a hearing officer for immediate help getting payments from the District for Chloe's pendency placement.

29.   Through my attorney, on January 17, 2008, we filed the underlying federal Complaint.  Also through my attorney, on January 17, 2008, I sent a written request to the hearing officer asking for enforcement of status quo; in this

request to the hearing officer, my attorney attached a copy of our federal court Complaint dated that same day, see hearing officer's reply[2], at page 7; he cites this federal court's index number 07-114, **Exhibit K**.

30.   Thus, on January 17, 2008, the District was given notice of the fact that we had appealed the SRO decision regarding 2006-07.  Their attorneys had the Complaint mailed to them that day.   Nonetheless, no efforts to maintain Chloe's placement were undertaken.  On January 21, 2008, I was notified that Kildonan would not allow Chloe to continue to attend school, **Exhibit L**.

31.   On February 15, 2008, the new impartial hearing officer wrote me that I could not have pendency without having a new hearing on the new IEP (2007-08).  On February 22, 2008, I cooperated with the hearing officer's insistence to expand the issue beyond status quo.  I wrote to re-instate yet another full hearing on the IEP, but when Mr. Nachman said he could not enforce pendency, I determined to bring the issue of pendency to court.

32.   On April 7, 2008, Kildonan received two checks totaling $5,182.50 from the Carmel Central School District for Chloe's 2007-08 tuition, **Exhibit M.** No other payments have been made and we need judicial intervention to secure Chloe's right to some stability in her education, see invoices dated yesterday, May 29, 2008 reflecting

33.   Our rights continue to be violated and Chloe's placement and education future is in serious jeopardy, see **Exhibit N (tuition bill dated 4/28/2008), Exhibit O (tuition bill dated yesterday, 5/29/2008) and Exhibit R.**

---

[2] Note hearing officer Nachman's typo regarding the date:  it was February 15, 2008, NOT March 15.

**WHEREFORE,** I AM REQUESTING EMERGENCY INTERVENTION FROM THIS COURT directing the School District to immediately undertake necessary steps to ensure our daughter's access to all IDEA entitlements, including "status quo", or "pendency" funding and to immediately bring the 2007-08 tuition payments up-to-date.  Plaintiffs ask the Court to issue an interlocutory Order requiring immediate, continuous, uninterupted and ongoing compliance with the placement that was operating at the time our Complaint was initiated, see the unappealed decision the SRO, at No. 06-005 (2005-06).


DATED:   May 30, 2008                    _____//s//_____

                                         LAURA DAVIS



Sworn to before me this 30th day
Of May 2008.

_____

  //s//

RosaLee Charpentier, Esq.
Attorney for Parents
Family Advocates, Inc.
209 Clinton Avenue
Kingston, New York 12477


      ECF

      To: Mark Rushfield, Esq.

## THE KILDONAN SCHOOL
425 MORSE HILL ROAD
AMENIA, NEW YORK, 12501
PHONE (845) 373-8111 • FAX (845) 373-9793

2005 - 2006
school year

Ms. Laura Davis
76 Bryant Trail
Carmel, NY 10512

Chloe Dabrowski          Kildonan TU 05-06

AMOUNT OF
REMITTANCE     $
$0.00

PLEASE DETACH AND RETURN THIS STUB WITH REMITTANCE

| DATE | REFERENCE | CHARGES | CREDITS |
|------|-----------|---------|---------|
| 6/1/2005 | Kildonan Day | $2,750.00 | |
| 8/1/2005 | Kildonan Day | $8,000.00 | |
| 9/1/2005 | Kildonan Day | $9,500.00 | |
| 9/22/2005 | Payment Received - Thank you | | $3,025.00 |
| 11/9/2005 | Payment Received - Thank you | | $3,025.00 |
| 11/21/2005 | Payment Received - Thank you | | $3,025.00 |
| 12/1/2005 | Kildonan Day | $10,000.00 | |
| 1/24/2006 | Payment Received - Thank you | | $3,025.00 |
| 3/8/2006 | Payment Received - Thank you | | $3,025.00 |
| 3/8/2006 | Payment Received - Thank you | | $3,025.00 |
| 3/20/2006 | Payment Received - Thank you | | $3,025.00 |
| 5/15/2006 | Payment Received - Thank you | | $3,025.00 |
| 6/16/2006 | Payment Received - Thank you | | $3,025.00 |
| 9/25/2006 | Payment Received - Thank you | | $3,025.00 |

| OVER 90 DAYS | 60-90 DAYS | 30-60 DAYS | CURRENT | TOTAL |
|--------------|------------|------------|---------|-------|
| | | | | $0.00 |

## STATEMENT

PLEASE REMIT $ _____ TO REPLENISH THIS ACCOUNT.

PLEASE MAKE CHECK PAYABLE TO THE KILDONAN SCHOOL

Ex. A

Item # L-FORM.  To order call Rediform Business Forms (800) 455-3470

# THE KILDONAN SCHOOL

425 MORSE HILL ROAD
AMENIA, NEW YORK, 12501
PHONE (845) 373-8111 • FAX (845) 373-9793

*2006 - 2007*
*School year*

ACCOUNT

Ms. Laura Davis
78 Bryant Trail
_____ NY 10512

Chloe Dabrowski

2006/07 Kildonan

| AMOUNT OF REMITTANCE | $ |
|---|---|
| | 30.00 |

**PLEASE DETACH AND RETURN THIS STUB WITH REMITTANCE**

| DATE | REFERENCE | CHARGES | CREDITS |
|---|---|---|---|
| 6/1/2006 | Kildonan Day | $2,800.00 | |
| 9/1/2006 | Kildonan Day | $9,000.00 | |
| 9/1/2006 | Kildonan Day | $10,500.00 | |
| 12/1/2006 | Kildonan Day | $10,600.00 | |
| 1/31/2007 | Payment Received - Thank you | | $3,290.00 |
| 1/31/2007 | Payment Received - Thank you | | $3,290.00 |
| 1/31/2007 | Payment Received - Thank you | | $3,290.00 |
| 1/31/2007 | Payment Received - Thank you | | $3,290.00 |
| 2/21/2007 | Payment Received - Thank you | | $3,290.00 |
| 3/13/2007 | Payment Received - Thank you | | $3,290.00 |
| 4/23/2007 | Payment Received - Thank you | | $3,290.00 |
| 6/26/2007 | Payment Received - Thank you | | $3,290.00 |
| 6/26/2007 | Payment Received - Thank you | | $3,290.00 |
| 6/26/2007 | Payment Received - Thank you | | $3,290.00 |

*← 1st payment by Carmel*

| 90+ DAYS | 31+ DAYS | CURRENT | TOTAL |
|---|---|---|---|
| | | | 30.00 |

## STATEMENT

PLEASE REMIT $_____ TO REPLENISH THIS ACCOUNT.

PLEASE MAKE CHECK PAYABLE TO THE KILDONAN SCHOOL.

*Ex. B*

Item #1  FORM  To reorder call Blackbaud Business Forms (800) 420-3037

Carmel School District
81 South St
Patterson, New York 12563
August 22,2007

**Re: We the parents of Chloe Dabrowski are requesting an Impartial Hearing.**

Dear Ms Rohe:

We are the parents of Chloe Dabrowski. We are writing to inform you that we are rejecting the IEP for 2007/08 and will be unilaterally enrolling our daughter, Chloe Dabrowski at Kildonan School, 425 Morse Hill road, Amenia, New York 12501, 10th grade for the 2007/08 school year. We intend to seek full tuition reimbursement and all related costs. As for the IEP it has not been reasonably calculated to enable Chloe to receive educational benefits, we believe it will not produce progress, but instead Chloe will regression. The I.E.P. does not accurately reflects the results of evaluations to identify the Chloe's needs, establishes annual goals and short-term instructional objectives related to those needs, and provides for the use of appropriate special education services. The IEP does not provide visual, auditory, and kinesthetic presentations to supplement textbooks in subject matter courses.

Unlike the Carmel School District 2007-08 IEP, Kildonan is very appropriate for the needs of Chloe because it is meaningful progress that addresses her dyslexia, slow processing abilities, helps her decode, and repeats information and decoding so she can store information from her short term memory to her long term memory. At Kildonan Chloe is taught by a language tutor privately, therefore she is progressing in decoding, comprehension, vocabulary, and fluency because of her one-on-one private continued intensive work in reading. Chloe meets the admissions criteria for Kildonan in that she had at least an average IQ and solid cognitive functioning but also had difficulty or lags in basic language skills. Kildonan has a wait list and does not have any need to keep Chloe unless she fits the criteria for placement. The curriculum used by Kildonan is approved by New York State and designed to be multisensory in nature. Kildonan academic program revolves around the intensive, daily, one-to-one Orton-Gillingham tutoring, which structures and dictates the language training sessions, also influences all the subject matter teaching. All of Kildonan School's subject matter teachers are trained and mentored in Orton-Gillingham, as well as multisensory teaching methodology. Carmel does not have any of this. Chloe's tutor at Kildonan provides review of information. Chloe is able to work on her handwriting, phonetic concepts, spelling, fluency, sentence structure, and writing paragraphs. She is practicing typing as well as handwriting her compositions, which included expanded paragraphs.

We believe the proposed IEP is inappropriate for Chloe Dabrowski because The 2007-08 I.E.P. was improper due to the lack of parents participation; the goals

Ex. C

and objectives listed on the IEP were inadequate and failed to properly account
for Chloe's present levels of performance; our unilateral placement of Chloe
meets her needs and allowed her to progress; the I.E.P. has Chloe in regular
education with a large class of students consultant for 39 min in English, 39 min.
Math, 39 min. Science, 39 min. Social Studies, then Resource Room with no one
who specializes in Orton-Gillingham method (which for four years has been the
method of teaching Chloe successfully! and Special Class Reading with a ratio of
15 students <printed on the 7/16/07 I.E.P. for 2007-08 school year, which allows
Ms. Paech to contend with a class full of students while trying to have students in
"one-on-one" reading would create mere trivial advancement. To our knowledge
39 min would give Chloe at the most 5 min of one-on-one instruction? We know
Chloe's scores would not continue to increase with 5 mins of one-on-one, her
scores and success were from Kildonan School individual educational program of
45 min of one-on-one tutorial individually structured for Chloe's ability to learn"
at her pace" (and only Chloe's learning style) and with a tutor in her day time
study hall for an additional 45 min, as well as educators accredited in the Orton-
Gillingham approach teacher her all day long (this adds 180 more mins of Orton
Gillingham teaching) for all her other academic classes at Kildonan. Ms. Paech
would be hard pressed to say her 39min. one-on-one in a class full of children
could stuff in the full day of services Chloe has been receiving consistently to
address her learning disability (dyslexia). Even the several SRO reports cite
Chloe's success and proper placement at Kildonan. Chloe often needs
information explained a second time or to spend additional time on a topic the
IEP does not provide for this. We know that Chloe has benefited from an
intensive study of the elements of the language; an exploration of the systematic,
structured writing process; teaching of vocabulary, comprehension, pragmatics,
and study skills; with lesson plans. Please inform the CSE committee that
Kildonan teachers are mentored weekly in Orton-Gillingham method as well as
being certified in Orton-Gillingham. Which of Chloe's teachers from the district
meet weekly with a certified Orton-Gillingham instructional leader? How would
the reading teacher overlap, code, and us system of symbolic relationships when
teaching Chloe to master this in 5 min of one-on-one? Chloe's learning style
requires her to read and reread in order to comprehend information.

I am very upset that the Carmel District Chairperson did not contact Kildonan to
get proper information and input from Chloe's current educators. He stated he
tried but do you think calling for Dr. Lanes input five minutes into the meeting
counts as addressing Kildonan input! I was in the room when the chairperson
called Dr. Lane five minutes into the May 7, 2007 meeting. The I.E.P. did not
address our request for consideration of other placement options, in particular,
special school options, like State Approved Private Schools for students with
dyslexia. Our efforts to convey information I had on the Landmark School feel on
closed ears at the May 7, 2007 meeting. As the I.E.P. states: page 5 "Out-of
District Options were brought up by parent" "the C.S.E. shared this would be too
restrictive" THIS IS AN OUT AND OUT UNTRUTH. What really happened was
that the Carmel District Chairperson disregarded my efforts to convey
information I had on the Landmark School at the meeting. When I requested the

discussion of State Approved Private Schools available to meet Chloe's disability (Dyslexia), I asked the Committee to consider Landmark, but he stopped all discussion. My participation was significantly impeded by not having based respect for my input and questions during the formulation of the IEP. My involvement was made to be completely superficial and disrespected. He stated he had no knowledge of State Approved School, and that "I sprung this on him". I came to this meeting thinking that the Chairperson was knowledgeable about the options for Chloe but he turned red and shut down my conversation by stating he would "look into the out-of –state options and get back to me. Instead I was given the May7, 2007 I.E.P. on July, 6, 2007 with this fictitious account of what occurred: page 5 "Out-of District Options were brought up by parent" "the C.S.E. shared this would be too restrictive". My participation was significantly impeded by not having based respect for my input and questions during the formulation of the IEP.

In particular, we want a program that revolves around intensive, daily, one-to-one private Orton-Gillingham tutoring which structures and dictates the language training sessions, and also influences the subject matter teaching, because that is what works for years for Chloe's learning style. We want a program where visual, auditory, and kinesthetic presentations supplement textbooks in Science, Global Studies, Math, and English courses. Chloe has already received resource room and consultant teacher services to assist her in her first grade classroom, and in second through fourth grades without success in the Carmel School District. Chloe was placed in integrated classrooms where she received varying levels of consultant teacher services and the result was that her processing speed continued to slow down each year. Even during Chloe's testing last year it was noted that Chloe's response to test items was delayed. As compared to same-age peers, Chloe's performance is low average in Mathematics and written expression; and low average in broad reading, basic reading skills, math calculation skills, and written language skills Based on the results of the Carmel School district testing, in our opinion Chloe would find age-level tasks requiring computational skills and automaticity with basic math facts difficult. In addition, due to delays in processing speed and on tasks requiring visual perceptual speed, we are aware that Chloe would find age-level tasks requiring "cognitive speediness" VERY difficult.

At Kildonan Chloe has been able to study phonetic concepts and sentence types, and learned to write basic paragraphs in a one-on-one tutorial for 45min. with educational program of 45 min of one-on-one private tutorial, individually structured for Chloe's ability to learn (and only Chloe's learning style) and with a tutor in her day time study hall for an additional 45 min, as well as educators accredited in the Orton-Gillingham approach teacher her all day long (this adds 180 more mins of Orton Gillingham teaching) for all her other academic classes at Kildonan.

In math, Chloe continues to learn how to master using a calculator and to have difficulty with reaching a level of automaticity with pre-algebra & algebra. The

Carmel School District I.E.P. would have Chloe in an geometry & trigonometry class!!! Chloe is also very limited on tasks requiring visual perceptual speed, so how would she keep up with other class members in her English, Global Studies, Science, and Math, course work. She has significant weaknesses in spelling which could not be addressed by the Carmel School District's I.E.P.

Chloe will not succeed in the Carmel school system due to her slow processing speed and her problems with reading, and we observed that Chloe has succeeded with Kildonan one-to-one instruction for language arts and also Chloe having assertion that she had dyslexia. In addition:
1) The CSE meeting for the May 7, 2007  was not run by a qualified, informed administrator/ Chairperson, and the regular education teacher did not serve a critical role in participating in the review and revision of Chloe's I.E.P, including the determination of appropriate behavioral interventions and strategies and the determination of supplementary aids and services, program modifications, and support for school personnel. She did not participate in discussions and decisions about how to modify the general curriculum in the regular classroom to ensure Chloe's involvement and progress in the general curriculum and participation in the general education environment
2) The CSE meeting for the July 6, 2007 meeting was without a five-day notice.
3) The CSE meeting for the July 9, 07 was canceled on July 8, 07!!!
4) The CSE composition for a July 16, 07 was not held with the parent's participation, even though the district receptionist, Lisa from your office called my husband Peter LaPlaca stating such. Peter then had our lawyer call your lawyer to confirm I was on family medical leaving for care of my mother who at the time was diagnosed with stage 4-pancreatic cancer. I believe the resulting I.E.P. is seriously compromised by not having our input. The result is that my daughter, Chloe Dabrowski, has been denied educational benefits. And it is unclear how the CSE determined appropriate goals and objectives for our daughter?

We feel the purpose behind the Individuals with Disabilities Education Act is to ensure that due to Chloe having a disability she needs to have available special education and related services designed to meet her unique needs, provided in conformity with a comprehensive written IEP. As we have stressed in the May 7, 2007 meeting we were willing to a program approved by the state but our request was terminated page 5 May 7, 2007 I.E.P. We feel you have not demonstrated the appropriateness of the program recommended by the Carmel School district CSE because the CSE did not complied with the procedural requirements set forth in the IDEA, and the IEP developed by Carmel's CSE was not reasonably calculated to enable Chloe to receive educational, seriously infringed on the parents' opportunity to participate in the IEP formulation process. Therefore we have great concern over Chloe's ability to be successful in the general education environment, even with additional support .

The IEP also does not have benchmarks or short-term objectives, related to meeting Chloe's needs arising from her disability to enable her to be involved in

and progress in the general curriculum, and meeting Chloe's other educational needs arising from her disability. In addition, by not having us (the parents) at the IEP we do not know how Chloe's progress towards the annual goals will be measured and how we would have been informed of such progress?

I am also concerned about Chloe's self-esteem decreasing as she has stated being fearful of attending the Carmel High school and states that at Kildonan she has regained a desire to succeed. At Kildonan Chloe has been prepared with the necessary materials, attentive, answering questions, and interacting with her teacher and the other students. She told me this is because she identifies with these students and feel she is not just a disability but also a whole person.

If you feel as we do that the district has not reviewed the evaluations completely, we invite you to either do so, or refer Chloe back to the Carmel School District for evaluation, if need be.

Ms. Rohe, Chloe's I.E.P. is extremely important to us! We want our daughter to be afforded to proper education, Once again, Kildonan is not in the market for keeping children past completion of meet the criteria for needing Kildonan population and learning methods. You are aware that there is a wait list of children with diagnoses of dyslexia wait to get into Kildonan. Chloe continues to need the Orton-Gillingham one-on-one teaching. Especially Chloe seeing as the Carmel School District is extremely late in paying the tuition even when Chloe had Status Quos. **We are requesting an Impartial Hearing.**

Sincerely,


Laura Davis
Mother

Ed Dabrowski
Father




Laura Davis ~ 76 Bryant Trail ~ Carmel ~ NY ~ 10512 ~ 845-225-1304

Carmel School District
81 South Street
Patterson, New York 12563
August 27, 2007

Dear Ms Rohe:

Please be advised that I am trying to arrange for my lawyer Rosa Lee Charpentier to discuss a course of action. As it is my understanding that in May 2007 you (Kathy Rohe, director of pupil services at Carmel School district had requested Kildonan to draft Chloe Dabrowski's contract for admission for the 2007-08 year. I also got a called from your office receptionist Lisa stating the Carmel School district had already arranged Chloe's transportation to Kildonan. Due to having this knowledge I find it confusing that you are now interested in discussing the obstruction Carmel School District's IEP causes to Chloe's ability to have an appropriate education. Does this mean you are not dismissing my request for consideration of other placement options, in particular, special school options, like State Approved Private Schools for students with dyslexia such as the Landmark School?

Or are you willing to re-explaining how Ms. Paech reading 39 min. program allows Ms. Paech to contend with a class full of students while trying to have students in "one-on-one" reading. To our knowledge 39 min would give Chloe at the most 5 min of one-on-one instruction? Kildonan School individual educational program of 45 min of one-on-one tutorial individually structured for Chloe's ability to learn (and only Chloe's learning style) and with a tutor in her day time study hall for an additional 45 min, as well as educators accredited in the Orton-Gillingham approach teacher her all day long (this adds 180 more mins of Orton Gillingham teaching) for all her other academic classes at Kildonan. Ms. Paech would be hard pressed to say her 39mins. one-on-one in a class full of children could stuff in the full day of services Chloe has been receiving consistently to address her learning disability (dyslexia). Even the two SRO reports cite Chloe's success, are you disagreeing with them?

In particular, we want a program that revolves around intensive, daily, one-to-one Orton-Gillingham tutoring which structures and dictates the language training sessions, and also influences the subject matter teaching, because that is what works for Chloe's learning style. Will you be telling us of such program at Carmel School district? If so why haven't you told us before of such program? Are you aware of any program that has what Kildonan have given Chloe for the last four years: a program where visual, auditory, and kinesthetic presentations supplement textbooks in subject matter courses with remedial strategies?

Sincerely,

Laura Davis
Mother

Ex. D

Carmel School District
81 South Street
Patterson, New York 12563
September 5, 2007

Dear Ms Rohe:

I just received a call from Lisa (your receptionist) stating you called a meeting today without answering my questions and **without my request** of such a meeting. I am begging you to respect my request for ANSWERS in writing to the following questions written to you on August 27, 2007:

1. Giving the hearing officer's decision for 100% reimbursement for the 2006-07 school year of our daughter, Chloe Dabrowski at Kildonan School, and the belated review (on August 28, 2007) of the May 7, 07 & July 16, 07 IEPs, has the Board of Education received and read the hearing officers decision?

2. It is also my understanding that in May 2007 you (Kathy Rohe, director of pupil services at Carmel School district had requested Kildonan to draft Chloe Dabrowski's contract for admission for the 2007-08 year. Are you offering Kildonan for Chloe's school placement? Why did you ask Kildonan for the contract all the way back in May 07?

3. I also got a called from your office receptionist Lisa stating the Carmel School district had already arranged Chloe's transportation to Kildonan. Due to having this knowledge I find it confusing that you won't answer my questions about your interest in Kildonan School for Chloe's placement?

4. Is the Carmel School District now interested in discussing other placement options, in particular, special school options, like State Approved Private Schools for students with dyslexia such as the Landmark School?

I am also begging you to respect my letters **literally** as you seem to invent my request for this meeting making it look as if I am not attending. Shame on you for this. I am very, very interested in your responses in writing, as in the past when I have spoken to the district via phone there has been a disjoint in what is said and what is interrupted by the Carmel School district. I believe writing clears this up these subjective phone conversations. I use the meeting you fabricated as an example of this as I was never notified of such a meeting nor requested it.

Sincerely,

Laura Davis
Mother

76 Bryant Trail, Carmel, New York 10512

Ex. E

# THE KILDONAN SCHOOL
425 MORSE HILL ROAD
AMENIA, NEW YORK, 12501
PHONE (845) 373-8111 • FAX (845) 373-9793

Ms. Laura Davis
_____ Trail
_____, NY 10512

9/28/2007

Chloe Dabrowski                    2007/08

AMOUNT OF   $
REMITTANCE
$23,550.00

PLEASE DETACH AND RETURN THIS STUB WITH REMITTANCE

| DATE | REFERENCE | CHARGES | CREDITS |
|---|---|---|---|
| 9/28/2007 | Kildonan Day | $3,000.00 | |
| 9/28/2007 | Kildonan Day | $10,000.00 | |
| 9/28/2007 | Kildonan Day | $10,550.00 | |

*We have not heard anything from the School District.*

*Ann E. Doll*
*Business Manager*

| | | | CURRENT | TOTAL |
|---|---|---|---|---|
| | | | | $23,550.00 |

## STATEMENT

PLEASE REMIT $_____ TO REPLENISH THIS ACCOUNT.

PLEASE MAKE CHECK PAYABLE TO THE KILDONAN SCHOOL.

Ex. F

## THE KILDONAN SCHOOL
### 425 MORSE HILL ROAD
### AMENIA, NEW YORK, 12501
### PHONE (845) 373-8111 • FAX (845) 373-9793

Ms. Laura Davis
76 Bryant Trail
Carmel, NY 10512

10/9/2007

Chloe Dabrowski                          2007/08

AMOUNT OF REMITTANCE   $              $23,550.00

PLEASE DETACH AND RETURN THIS STUB WITH REMITTANCE

| DATE | REFERENCE | CHARGES | CREDITS |
|------|-----------|---------|---------|
| 8/1/2007 | Kildonan Day | $3,000.00 | |
| 9/1/2007 | Kildonan Day | $10,000.00 | |
| 10/1/2007 | Kildonan Day | $10,550.00 | |

PAST DUE

| | | | CURRENT | TOTAL |
|--|--|--|---------|-------|
| | | | | $23,550.00 |

### STATEMENT

PLEASE REMIT $_____ TO REPLENISH THIS ACCOUNT.

PLEASE MAKE CHECK PAYABLE TO THE KILDONAN SCHOOL

Ex. G

# The Kildonan School
### Founded in 1969

November 1, 2007

Kathryn W. Rohe
Carmel Central School District
P.O. Box 296
81 South Street
Patterson, NY 12563

2007/08 Kildonan School Year Tuition : Chloe Dabrowski

| | |
|---|---|
| Tuition due 09 / 2007 | $ 3,455.00 |
| Tuition due 10 / 2007 | $ 3,455.00 |
| Tuition due 11 / 2007 | $ 3,455.00 |
| Total due | $10,365.00 |

Ann E. Still
Business Manager

$Ex. H$

425 Morse Hill Road, Amenia, NY 12501  ~  Telephone: 845/373-8111  ~  Facsimile: 845/373-9793

TOTAL P.02
PAGE.02

NOV 12 2007 11:43

1

Carmel School District
81 South St
Patterson, New York 12563
November 17, 2007

Re: Chloe Dabrowski Impartial Hearing.

Dear Ms Rohe:

We are the parents of Chloe Dabrowski. We are requesting an Impartial Hearing regarding the School District's failure to provide for 'pendency' placement during its appeal to the State Review Officer. $10,365.00 is outstanding at this date to Kildonan School District, 425 Morse Hill Road, Amenia, NY 12501. Since we have rejected the proposed 2007-08 IEP, notice sent: August 22, 2007i 10 day letter, and since the district has chosen to appeal the IHO decision, status quo placement as defined by the last unappealed decision (which identifies Kildonan as Chloe's appropriate placement), must be continued.

Carmel School District has not paid the 2007/08 Kildonan School tuition even when Chloe had Status Quos.

Sincerely,

*Laura Davis*

Laura Davis
Mother

*Edward Dabrowski*

Edward Dabrowski
Father

**RECEIVED**

NOV 19 2007

Carmel Central School District
Pupil Services Department

Laura Davis ~ 76 Bryant Trail ~ Carmel ~ NY ~ 10512 ~ work 914-925-5449

$Ex. I$



# The Kildonan School
### Founded in 1969

November 1, 2007

Kathryn W. Rohe
Carmel Central School District
P.O. Box 296
81 South Street
Patterson, NY 12563

2007/08 Kildonan School Year Tuition: Chloe Dabrowski

| Tuition due 09 / 2007 | $ 3,455.00 |
| Tuition due 10 / 2007 | $ 3,455.00 |
| Tuition due 11 / 2007 | $ 3,455.00 |
| Total due | $10,365.00 |

Ann E. Still
Business Manager

425 Morse Hill Road, Amenia, NY 12501  -  Telephone: 845/373-8111  -  Facsimile: 845/373-2793

NOV 12 2007 11:43

TOTAL P.02
PAGE.02

** TOTAL PAGE.03 **

Ex. I,
p.2

*** TX STATUS REPORT ***                AS OF  DEC 21 2007 10:18  PAGE.01

| | DATE | TIME | TO/FROM | MODE | MIN/SEC | PGS | JOBS | STATUS |
|---|---|---|---|---|---|---|---|---|
| 04 | 12/21 | 10:18 | 91845876433785655 | EC--S | 00'18" | 002 | 143 | OK |

## THE KILDONAN SCHOOL
425 MORSE HILL ROAD
AMENIA, NEW YORK, 12501
PHONE (845) 373-8111 • FAX (845) 373-8703

Ms. Lisa Davis                                    12/17/2007
79 Bryant Trail
Carmel, NY 10512                 Chloe Dabrowski        2007/08

                                 AMOUNT OF
                                 REMITTANCE   $        335,450.00

PLEASE DETACH AND RETURN THIS STUB WITH REMITTANCE

| DATE | REFERENCE | CHARGES | CREDITS |
|---|---|---|---|
| 9/27/2007 | Kildonan Day | 53,000.00 | |
| 9/5/2007 | Kildonan Day | $10,000.00 | |
| 9/20/2007 | Mandatory Athletic Fee | 8900.00 | |
| 11/1/2007 | Kildonan Day | $10,550.00 | |
| 12/1/2007 | Kildonan Day | $11,000.00 | |

*We have not heard anything from
the School District [?].
Please let me know what is
happening.*

*[signature]*
*Business Manager*

| | | | | CURRENT | | TOTAL |
|---|---|---|---|---|---|---|
| | | | | | | 335,450.00 |

## STATEMENT

PLEASE REMIT $ ............ TO REPLENISH THIS ACCOUNT.

PLEASE MAKE CHECK PAYABLE TO THE KILDONAN SCHOOL

Ex. J

05/26/2008  15:18    845-245-1857           CHARPENTIER                    PAGE   03
Case 7:08-cv-00445-KMK   Document 17-12   Filed 07/01/2008   Page 1 of 3
02/15/2008  19:43    3398089                                              PAGE   03

      02/15/2008  18:18    9149604915
                                              140
                                          NACHMAN                          PAGE   02

## In the Matter of CD and the Carmel Central School District

### STUDENT'S PENDENCY MOTION

I was appointed to hear this matter on November 27, 2007 by the Carmel CSD. The resolution period ended on January 4, 2008. On January 9, 2008 the record close date was extended to February 1, 2008. On January 31, 2008 the record close date was extended to February 28, 2008.

### POSITION OF THE PARTIES

A motion was made on behalf of the family to determine CD's pendency placement. It is the family's position "that the student's 'pendency' placement for the period beginning September 2007 and continuing through today's date is the Kildonan School. The parents request an order directing the School District to immediately undertake necessary steps to ensure the student's 2007-08 tuition payments are up-to-date." (Motion pg. 5) I note the 'today's date' as set forth on the motion is January 17, 2008.

The District maintains that it is not obligated under the pendency provisions of State or Federal law to make 2007/2008 tuition payments to Kildonan. It is also the position of the District that this motion only covers the period from the second week of September, 2007 through November 14, 2007.

### BACKGROUND

On August 19, 2004, the parents of CD rejected the District's proposed placement and IEP for the 2004/2005 school year. The parents requested an

2

E.K

t

The pendency provisions of the IDEA and the New
York State Education Law require that a child
remain in his or her then current placement, unless
the child's parents and the board of education
otherwise agree, during the pendency of any
proceedings relating to the identification,
evaluation or placement of the child (20 U.S.C. §
1415[j]; N.Y. Educ. Law section 4404[4]). Pendency
has the effect of an automatic injunction, which is
imposed without regard to such factors as
irreparable harm, likelihood of success on the
merits, and a balancing of the hardships (Zvi D. v.
Ambach, 694 F.2d 904 [2d Cir. 1982]; Drinker v.
Colonial School Dist., 78 F.3d 859 [3d Cir. 1996]).
The purpose of the pendency provision is to provide
stability and consistency in the education of a
child with a disability (Honig v. Doe, 484 U.S. 305
[1987]).

Under the IDEA, the inquiry focuses on
identifying the child's then current educational
placement (Zvi D., 694 F.2d at 906). Although not
defined by statute, the term "then current
placement" has been found to mean the last agreed
upon placement at the moment when the due process
proceeding is commenced (Application of a Child
with a Disability, Appeal No. 97-80). The U.S.
Department of Education has opined that a child's
then current placement would " ... generally be taken
to mean current special education and related
services provided in accordance with a child's most
recent [IEP]" (Letter to Baugh, EHLR 211:481; see
also Drinker, 78 F.3d at 867; Gregory K. v.
Longview School Dist., 811 F.2d 1307 [9th Cir.
1987]).

The pendency provisions of the IDEA and the New
York State Education Law require that a child
remain in his or her then current placement, unless
the child's parents and the school district
otherwise agree, during the pendency of any

impartial hearing to specifically review their
claim that the student required one-to-one
instruction for language arts, Id. The SRO, in his
unappealed decision of August 10, 2005 (SRO
Decision No. 05-063) affirmed the parents' position
that the District's IEP was inappropriate and that
the "unilateral placement [at Kildonan] was
appropriate",

The parents did not agree with the IEP for the
2005/2006 school year. On August 18, 2005, the
parents once again rejected the District's plan for
CD and another impartial hearing was undertaken. On
March 7, 2006, the SRO issued a final decision (SRO
Decision No. 06-005) holding that the IEP was
inappropriate and that the parents' unilateral
placement at the Kildonan School was appropriate.

On August 23, 2006, the parents rejected the
proposed IEP and placement for the 2006/2007 school
year. An impartial hearing was undertaken regarding
the 2006-07 year. On August 24, 2007, the impartial
hearing officer issued a decision concluding that
the student had been denied access to a free
appropriate public education and declaring that the
Kildonan School was the appropriate placement.

The District took an appeal to the SRO who on
November 14, 2007 reversed the Hearing Officer's
decision regarding FAPE and held in favor of the
District (SRO Decision No. 07-114). The parents
subsequently took an appeal from this decision to
the United States District Court, S.D.N.Y. (08 Civ.
0445, Judge Karas, filed January 17, 2008), where
the matter is now pending.

The District developed an IEP for the 2007/2008
school year. On August 22, 2007 the parents
requested an impartial hearing to determine if a
FAPE was offered for that school year. The parents

Were seeking tuition payment at Kildonan for the
2007/2008 school year. By letter dated September 7,
2007 the parents withdrew the August 22, 2007
hearing request.

On November 19, 2007 the parent requested "an
Impartial Hearing regarding the School District's
failure to provide for 'pendency' placement during
its appeal to the State Review Officer." This is
the request that I was appointed to hear.

FINDINGS OF LAW

Application of a Child with a Disability,
Appeal No. 02-068 clearly states that "the pendency
provisions of the Individuals with Disabilities
Education Act (IDEA) and the New York State
Education Law require that a child remain in his or
her then current placement, unless the child's
parents and the board of education otherwise agree,
during the pendency of any proceedings relating to
the identification, evaluation or placement of the
child (20 U.S.C. § 1415[j]; N.Y. Educ. Law section
4404[4]). Pendency has the effect of an automatic
injunction, which is imposed without regard to such
factors as irreparable harm, likelihood of success
on the merits, and a balancing of the hardships
(Zvi D. v. Ambach, 694 F.2d 904 [2d Cir. 1982];
Drinker v. Colonial School Dist., 78 F.3d 859 [3d
Cir. 1996]). The purpose of the pendency provision
is to provide stability and consistency in the
education of a child with a disability (Honig v.
Doe, 484 U.S. 305 [1987]). It does not mean that a
student must remain in a particular site or
location (Application of the Bd. of Educ., Appeal
No. 99-90) or at a particular grade level
(Application of a Child with a Disability, Appeal
No. 95-16).

proceedings relating to the identification, evaluation or placement of the child.  20 U.S.C. §1415; N.Y. Educ. Law §4404(4).  The inquiry focuses on identifying the child's then current education placement.  This term has been found to mean the last agreed upon IEP at the moment when the impartial hearing was requested.  See Application of a Child with a Disability, Appeal No. 07-063; Application of a Child with a Disability, Appeal No. 02-023; Application of a Child with a Disability, Appeal No. 97-080.

Under the IDEA, the inquiry focuses on identifying the child's then current educational placement (Zvi D., 694 F.2d at 906).  Although not defined by statute, the term "then current placement" has been found to mean the last agreed upon placement at the moment when a due process proceeding is commenced (Application of a Child with a Disability, Appeal No. 97-80).  However, pursuant to 34 C.F.R. § 300.514(c) if the decision of the SRO agrees with the child's parents that a change of placement is appropriate, such placement must be treated as an agreement between the state or local agency and the parents for the purposes of pendency (Schutz, 137 F. Supp. 2d 83).

Pendency has the effect of an automatic injunction, which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships. It is clear that a child shall remain in his or her then current placement, unless the child's parents and the school district otherwise agree, during the pendency of any proceedings relating to the identification, evaluation or placement of the child.

It is not disputed that an Impartial Hearing Officer found that Carmel did not offer CD a FAPE

2

05/26/2008  15:18    845-246-1857        CHARPENTIER              PAGE  08
Case 7:08-cv-00445-KMK    Document 17-13    Filed 07/01/2008    Page 3 of 3
02/15/2008  19:43    3398089                                        PAGE  07

02/15/2008  18:23    9149604915            NACHMAN                  PAGE  03

for the 2006/2007 school. The Hearing Officer also
found that Kildonan was an appropriate. The parents
were awarded tuition at Kildonan. The District
appealed to the SRO. In decision No. 07-114, on
November 14, 2007, the SRO reversed the Hearing
Officer's decision regarding FAPE and held in favor
of the District. This SRO decision was not appealed
until January 17, 2008 (U.S.D.C., S.D.N.Y. (08 CIV.
0445) The parents also initiated a due process
proceeding on August 22, 2007 and withdrew that
proceeding on September 7, 2008.

The District is not responsible for the
2007/2008 Kildonan tuition.
   200.5(2)(m) *Student's status during
   proceedings.* (1) Except as otherwise provided
   in paragraph (2) of this subdivision and
   section 200.16 of this Part and Part 201 of
   this Title, during the pendency of any
   proceedings conducted pursuant to subdivisions
   (j) or (k) of this section, unless the local
   board of education and the parents otherwise
   agree, the student shall remain in the then
   current placement of such student. During the
   pendency for any due process proceeding
   relating to the evaluation and initial
   placement in special education, unless the
   local board of education and the parents
   otherwise agree, the student shall not be
   evaluated and shall remain in the then current
   educational placement of such student or, if
   applying for initial admission to a public
   school, shall be placed in the public school
   program until all such proceedings have been
   completed.

There is currently no due process proceeding for
pendency to attach. On August 22, 2008, when a due
process proceeding hearing was requested, pendency
was the last unappealed SRO decision (No. 07-114)

3